GARRISON, Judge.
Plaintiffs, Vickie Ann Housley, wife of/and William Housley, individually and on behalf of their minor daughter, Vickie Ann Housley, filed this action for damages against defendants, Dr. and Mrs. Elmo Cerise and their liability insurer, Aetna Casualty and Surety Company, for injuries to them resulting from an accident allegedly sustained by Mrs. Housley on June 5, 1982 in an apartment on 624 Commerce Street in Gretna rented by the Housleys and owned by Dr. and Mrs. Cerise. Mrs. Housley, who was six months pregnant at the time, was descending the stairway in the apartment when she allegedly fell down the stairs due to condensation on the carpet at the top of the stairway caused by an air conditioning unit. Plaintiffs claim that this fall caused the premature birth of the Housley’s daughter Vickie Ann and her resulting severe health problems including two and one-half months of hospitalization following her birth. Plaintiffs further claim that the defendants are strictly liable to plaintiffs' for the defect on the leased premises, i.e. the leaking air conditioning unit which caused the condensation at the top of the stairway, or, alternatively, that this accident was caused by the defendants’ negligence.
After trial in this matter, the trial judge rendered judgment, with written reasons, as follows:
1) in favor of the minor, Vickie Ann Housley, and against Dr. Elmo Cerise and Aetna Casualty and Surety Company for $400,000.00, including $250,-000.00 for past and future pain and suffering, mental anguish and physical and intellectual permanent disabilities and $150,000.00 for loss of earning capacity, together with legal interest from the date of judicial demand;
2) in favor of William Housley and against Dr. Elmo Cerise and Aetna Casualty and Surety Company, for medical expenses of the minor, Vickie Ann Housley, in the sum of $55,552.58, including $50,552.58 for past medical expenses and $5,000.00 for future medical expenses, together with legal interest from date of judicial demand;
3) in favor of Mrs. Vickie Housley and against Dr. Elmo Cerise and Aetna Casualty and Surety in the sum of $35,000.00 for her physical and emotional pain and suffering, together with legal interest from date of judicial demand;
4) expert witness fees assessed against the defendants.
From that judgment, the defendants now appeal arguing five assignments of error.
In the first assignment of error, the appellants argue that appellees failed to prove by a preponderance of the evidence that Mrs. Housley sustained a fall in her apartment on June 5, 1982 which caused the injuries claimed in this lawsuit.' The trial judge observed the credibility of the witnesses and stated in his reasons for judgment that he was convinced by Mrs. Housley’s testimony at trial that she fell down the stairway in her apartment after *573 slipping on the condensation at the top of the stairway on the afternoon of June 5, 1982. The trial judge also noted that Mary Bates, Mrs. Housley’s sister-in-law, testified that she witnessed Mrs. Housley’s fall. There was no testimony by any eyewitness indicating that the fall did not occur.
Appellees argue that the fact that the fall was not noted in the hospital records by any physician or nurse who treated Mrs. Housley at either of the two hospitals visited by the Housleys shortly after the accident proves that the fall did not occur. However, after lengthy testimony concerning the medical records in this case, the trial judge observed the credibility of the witnesses and concluded that the testimony of Mrs. Housley about the fall and the testimony of Mr. Housley about Mrs. Hous-ley’s complaints after the fall and his assertion that the occurrence of the fall was reported to hospital personnel and to Mrs. Housley’s doctor’s answering service right after the accident were not impeached by the fact that none of the medical records pertaining to Mrs. Housley mentioned a fall on the afternoon in question. Because the fact finder is in the best position to determine the credibility of the witnesses, we do not find the trial judge’s conclusion that Mrs. Housley’s fall did occur to be manifestly erroneous.
In the second assignment of error, the appellants argue that the appellees failed to sufficiently prove that Mrs. Hous-ley’s fall caused the premature birth of her child by cesarean section. The appellants base this argument primarily upon the testimony of Dr. Vincent Culotta, an expert gynecologist, who stated that, in his opinion, the premature birth in this case was not caused by a trauma or fall; rather, it was probably caused by an infection. However, as noted by the trial judge, Dr. Culotta never examined Mrs. Housley and based his testimony upon the records of two of Mrs. Housley’s treating physicians which indicated that Mrs. Housley had a minor infection in the first trimester of her pregnancy.
Appellants’ more compelling argument in this assignment of error is that the appel-lees failed to establish through medical testimony that the premature birth of Vickie Ann Housley by cesarean section was caused more probably than not by the fall allegedly sustained by Mrs. Housley on the afternoon of June 5, 1982. In Mart v. Hill, 505 So.2d 1120 (La.1987), the Louisiana Supreme Court held that:
“In a personal injury lawsuit, the test for determining the causal relationship between the accident and subsequent operations is whether the plaintiff proved through medical testimony that it was more probable than not that subsequent operations were caused by trauma suffered in the accident ... Lawsuits cannot be decided on speculation or suspicion alone.”
As mentioned above, Mrs. Housley’s fall was not noted in any of the medical records prepared by any of the physicians or nurses who treated her at either of the two hospitals visited by the Housleys shortly after the accident. At trial, Dr. Juan Laba-die, one of Mrs. Housley’s obstetricians,' was asked the following hypothetical question by appellees’ counsel:
“Can a fall cause a woman to rupture what is known as the bag of water that surrounds the baby prior to birth?” Tr. pp. 279-280
Dr. Labadie’s response to that hypothetical question was:
“As a possibility, yes.”
Tr. p. 280
Later in Dr. Labadie’s examination by ap-pellees’ counsel, the following exchange occurred:
“Q. Doctor, if I ask you to assume for the purpose of this question that subsequent to the visit of May 24th and the negative urinalysis on May 28th, that on June 4, 1982 Mrs. Housley fell down a flight of stairs and within several minutes of her falling down a flight of stairs she noticed a watery discharge from the vaginal area and I ask you to further assume that her bag of water was subsequently diagnoses (sic) as having broken; would it be fair to say that the fall down the flight of stairs, if it in fact occurred, *574 was a contributing cause to the breaking of the bag of water?
MR. NIELSEN:
I note an objection. He has the date wrong and also the testimony today that it was not water but mucous.
THE COURT:
Objection overruled.
THE WITNESS:
I would say that I would have to consider that as a contributing factor.
EXAMINATION BY MR. STERN:
Q. And it is your experience based upon your own personal practice and your review of the literature, both in your training and your on-going practice, that a fall such as this can in fact contribute to the rupturing to the bag of water?
MR. NIELSEN:
Objection.
THE COURT:
Objection overruled.
EXAMINATION BY MR. STERN:
Q. Assume the same type of fall that I applied to the previous question, a fall down a flight of stairs.
A. Well, a realm of possibilities has to be included, yes.”
Tr. pp. 287-288
Clearly, the above testimony by Dr. La-badie did not establish that it was more probable than not that Mrs. Housley’s fall caused the rupture of membranes commonly known as the water bag and the subsequent premature birth of her daughter by cesarean section. Dr. Labadie’s response to hypothetical questions that a fall could possibly cause the rupture of a water bag or could be considered to be a contributing factor of such amounts to sheer speculation and falls below the standard enunciated in Mart v. Hill, supra. The mere possibility of a causal connection is insufficient to prove medical causation. Creel v. S.A. Tarver & Son Tractor Co., Inc., 537 So.2d 752 (La.App. 1st Cir.1988), citing Wells v. Allstate Ins. Co., 510 So.2d 763 (La.App. 1st Cir.), writ denied, 514 So.2d 463 (La.1987).
On cross-examination, appellants’ counsel attempted on three different occasions to elicit Dr. Labadie’s opinion as to medical causation in this case. On each occasion, appellees’ counsel objected to the questioning on this issue before Dr. Labadie had a chance to respond.
After ascertaining that Dr. Labadie’s records on Mrs. Housley did not include any notation as to a fall prior to the birth of Mrs. Housley’s daughter, appellants’ counsel asked Dr. Labadie the following question:
“Sir, based on what you told us about trauma causing premature rupture and what you found based on the medical records, can you tell us whether or not you believe that a fall caused this premature rupture of the membrane?”
Tr. p. 308
Appellees’ counsel objected to this question but the trial judge overruled the objection. Dr. Labadie then asked if he could give an opinion based on a theoretical situation but the trial judge would not allow him to do so.
Appellants’ counsel then tried again to elicit Dr. Labadie’s opinion as to medical causation in this case with the following question:
“Considering that the medical records contain no history of the fall, and considering that you have said that a trauma that would cause a premature rupture of membranes would leave certain signs — ”
Tr. p. 309
Appellees’ counsel objected to the use of the word “would,” arguing that Dr. Laba-die had stated earlier that a trauma could cause a premature rupture of membranes. The trial judge sustained appellees’ counsel’s objection to that question.
Appellants’ counsel tried yet another time to elicit Dr. Labadie’s opinion as to medical causation in this case with the following question:
“So based on medical records and no signs of injury, do you believe a fall caused this premature rupture of the membrane?”
Appellees’ counsel objected to this question because of the fact that the medical *575 records in this case do not include any notation prior to the birth about the fall in question. The trial judge sustained this objection and specifically noted that no information about a fall is included in Dr. Labadie’s records on Mrs. Housley prior to the birth of her daughter.
Dr. Labadie was then asked when he first was told by Mrs. Housley about her fall. He responded that his first reference to the fall in his records indicates that he was asked on January 12, 1983 to write a letter stating that Mrs. Housley was treated at the emergency room on June 5, 1982 and that she stated at the time that she had suffered a fall at home. Dr. Labadie testified that the only reason that he wrote this letter was because his patient requested that he do so for health insurance purposes and that his statements in the letter were not meant to indicate that he was present in the emergency room when Mrs. Housley was treated or that he personally learned that Mrs. Housley had fallen on that date. In fact, although Mrs. Housley testified that Dr. Labadie treated her on June 5, 1982, the night that she went to the emergency room, Dr. Labadie’s records indicate that he did not see Mrs. Housley in the hospital until June 8, 1982.
It is clear from Dr. Labadie’s testimony that he was unwilling to specifically state that a fall more probably than not caused Mrs. Housley to suffer the rupture of her water bag which brought on her premature delivery of her daughter by cesarean section. Dr. Labadie’s unwillingness to directly testify that a fall more probably than not caused Mrs. Housley’s premature delivery is understandable in that his records contain no evidence prior to the birth of any fall reported by Mrs. Housley. Appellees’ counsel’s strenuous objections to appellants’ counsel’s specific questions on medical causation during cross-examination of Dr. Labadie demonstrate that appellees’ counsel was aware of Dr. Labadie’s unwillingness to specifically relate Mrs. Hous-ley’s rupture of her water bag and subsequent premature delivery to a serious fall allegedly suffered by Mrs. Housley which was not noted in any of Dr. Labadie’s records prior to the premature delivery.
In Rosell v. ESCO, 549 So.2d 840 (La.1989), the Louisiana Supreme Court stated that:
“It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong,’ and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973) ... The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.”
A review of the entire record in this case does not reveal any reasonable factual basis for the trial court finding that medical causation was sufficiently established in this case.
Neither Dr. Labadie nor any other physician testifying in this case established that a fall more probably than not caused Mrs. Housley’s rupture of membranes known as the water bag and the subsequent premature delivery of her daughter by cesarean section. Dr. Labadie testified only that a fall could have possibly caused the rupture of Mrs. Housley’s water bag which precipitated her cesarean section or could have been considered a contributing factor to her problems. That testimony was insufficient to prove medical causation. Mart v. Hill, supra; Creel v. S.A. Tarver & Son Tractor Co., Inc., supra. Dr. F.E. Astilla, an obstetrician who treated Mrs. Housley on June 6, 1982, the day following her admission to the hospital, was not even called by the appellees to testify in this case.
*576 Accordingly, we find that the trial judge was manifestly erroneous in concluding that medical causation was sufficiently proven in this case. Because the appellees’ failure to prove medical causation mandates a reversal of the trial court judgment in appellees’ favor, we need not address the remaining assignments of error in this case.
Therefore, for the reasons stated above, we hereby reverse the trial 'court judgment in favor of plaintiffs/appellees and against the defendants/appellants and we render judgment in favor of defendants/appellants and against plaintiffs/appellees dismissing plaintiffs/appellees suit with each party to bear its own costs.
REVERSED AND RENDERED.