579 So.2d 973 (1991)
William James Henry HOUSLEY, et al.
v.
Dr. Elmo CERISE, et al.
Nos. 90-C-2304, 90-C-2324.
Supreme Court of Louisiana.
May 6, 1991.
Rehearing Granted in Part and Denied in Part June 13, 1991.
*974 Gerald J. Nielsen, Middleberg, Riddle & Gianna, New Orleans, for Dr. Elmo Cerise, et al., defendants-applicants.
Perrin C. Butler and Robert Stern, Butler & Stern, Metairie, for William James Henry Housley, et al., plaintiffs-respondents.
COLE, Justice.
Plaintiffs, Vickie Ann and William Housley, individually and on behalf of their minor daughter, Vickie Housley, filed suit against Dr. and Mrs. Elmo Cerise and their liability insurer, Aetna Casualty and Surety Company, for damages resulting from an alleged accident in a townhouse rented by the Housleys and owned by Dr. and Mrs. Cerise. On June 5, 1982, Mrs. Housley, who was six months pregnant at the time, was descending the stairway in the townhouse when she allegedly slipped on a large wet spot on the carpet. The wet spot was apparently caused by a leaking air conditioning unit. Plaintiffs claim the fall caused Mrs. Housley's water bag to rupture, which in turn caused her to undergo an emergency caesarean section four days later. Additionally, plaintiffs claim the *975 premature birth of their daughter caused her to suffer serious health problems that will continue to afflict her throughout her life. Plaintiffs claim Dr. and Mrs. Cerise are strictly liable for the injuries caused by the defect in the leased premises (i.e., the leaking air conditioning unit), or alternatively, that they were negligent in failing to repair the unit after being warned of its defect.
After a bench trial on the merits, the trial court rendered judgment in favor of plaintiffs, awarding them $640,552.58 in damages.[1] The court was "impressed" with the testimony of Mr. and Mrs. Housley and believed their contention that Mrs. Housley actually fell down the stairs. Likewise, the court found sufficient evidence that the fall caused Mrs. Housley's water bag to burst, which in turn caused the premature delivery of her daughter.
The Court of Appeal, Fourth Circuit, reversed the trial court's judgment and rendered judgment in favor of defendants. Housley v. Cerise, 568 So.2d 571 (La.App. 4th Cir.1990). On the issue of whether Mrs. Housley actually fell down the stairs, the court of appeal reviewed the record and found that the trial court's finding was not manifestly erroneous. The court noted that Mrs. Housley's testimony was corroborated by her sister-in-law, Mary Bates, who testified she saw Mrs. Housley fall. The court, however, reversed on the issue of causation. The court concluded plaintiffs failed to prove, through medical testimony, that the premature birth of the child was caused more probably than not by the fall. The court stated:
Neither Dr. Labadie nor any other physician testifying in this case established that a fall more probably than not caused Mrs. Housley's rupture of membranes known as the water bag and the subsequent premature delivery of her daughter by caesarean section. Dr. Labadie testified only that a fall could have possibly caused the rupture of Mrs. Housley's water bag which precipitated her caesarean section or could have been considered a contributing factor to her problems. That testimony was insufficient to prove medical causation. (Citations omitted).
Id. at 575.
Both plaintiffs and defendants applied to this Court for writs of certiorari. Plaintiffs challenge the court of appeal's ruling on causation, and defendants challenge the court of appeal's affirmance of the trial court's ruling on the question of whether Mrs. Housley actually slipped and fell down the stairs of her apartment. We granted writs on these consolidated applications to review the judgment of the court of appeal. We now reverse and reinstate the judgment of the trial court.

I.
We first address the trial court's finding that Mrs. Housley actually fell. Defendants essentially argue the documentary evidence introduced at trial so strongly contradicts plaintiffs' allegations that the trial court's finding must be considered manifestly erroneous. According to defendants, the evidence introduced at trial strongly suggests the Housleys fabricated the story of Mrs. Housley's fall in an attempt to get Dr. and Mrs. Cerise's liability insurer to pay for medical bills, which were not covered by the Housley's health insurance. We find this argument unconvincing.
The trial court's finding that Mrs. Housley actually slipped and fell on the stairs of her apartment is a factual finding which should not be reversed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). In Mart v. Hill, 505 So.2d 1120 (La.1987), we again described the two-part test to be used for appellate review of fact:
1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court, and

*976 2) the appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous).
Id. at 1127. In essence, this test means a reviewing court must do more than simply review a record for some evidence which supports the trial court's finding; it must determine that the record, as a whole, establishes the trial court was justified in its conclusions. However, because the factfinder is best aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said, when there is a conflict in the testimony reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell, supra at 844; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The reviewing court must always keep in mind that "if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Sistler, supra at 1112. However, if documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error even in a finding purportedly based upon a credibility determination. Rosell, supra at 844-45.
In this case, plaintiffs offered the testimony of Mrs. Housley and her sister-in-law, Mary Bates, to support their contention that Mrs. Housley actually fell. Mrs. Housley testified that on June 5, 1982, she, Mary Bates, and two neighbors were inside Mrs. Housley's townhouse preparing for a barbecue that evening. Because of a leaking air conditioning unit located at the top of the staircase, most of the carpet near the top of the staircase was wet. Mrs. Housley stated she and her two neighbors were upstairs while Mary Bates was downstairs on the telephone. Just as Mrs. Housley and the neighbors were proceeding downstairs, Mrs. Housley slipped on the wet carpet. Apparently, her right leg remained on one step and her left leg slipped forward, causing her to fall onto her buttocks and strike her back on the stairs. Mary Bates and the other neighbors brought Mrs. Housley to her couch, and Mrs. Housley noticed she was losing fluid from her vaginal area. Mrs. Housley then called Dr. Labadie, her gynecologist, but got his answering service instead. After calling Dr. Labadie's office, Mrs. Housley remained on her couch with her legs elevated.
Mr. Housley returned home from work at approximately 4:30 p.m., and found his wife on the couch "crying and in pain." Later on that same evening, the Housleys went to the hospital. They were instructed to go to F. Edward Hebert Hospital but Mr. Housley, being unfamiliar with the location of F. Edward Hebert Hospital, brought Mrs. Housley to Jo Ellen Smith Hospital. Once at Jo Ellen Smith's emergency room, Mrs. Housley spoke with two nurses and one doctor and remembers telling at least one nurse about her fall. The personnel at Jo Ellen Smith Hospital informed Mrs. Housley the hospital only delivered babies in emergency situations and gave the Housley's directions to F. Edward Hebert Hospital. One of the nurses called the emergency room at Hebert and informed the nurses there of the Housleys' pending arrival. Additionally, one of the nurses at Jo Ellen Smith gave Mrs. Housley some papers to give to the Hebert emergency room nurse upon arrival. Both Mr. and Mrs. Housley testified nurses were waiting for them at Hebert's emergency room when they arrived. Mrs. Housley saw several nurses at Hebert, and remembers telling one of them about the fall. She could not, however, specifically remember which nurse she told.
*977 Mary Bates corroborated Mrs. Housley's testimony concerning the events that took place before Mrs. Housley went to the hospital. She was living with the Housleys at the time of the accident, and testified the carpet on the stairs had been wet for some time prior to June 5, 1982. She also stated she had overheard Mrs. Housley complain about the wet carpet to the apartment manager, Ewell Potts, III, on several occasions before the accident. On the day of the accident, she was downstairs using the telephone while Mrs. Housley was upstairs getting dressed. Mary Bates finished using the telephone and walked over to the bottom of the stairway just as Mrs. Housley began to proceed downstairs. She testified she saw Mrs. Housley slip on the stairs and fall. Immediately after the fall, Mary Bates and the two neighbors helped Mrs. Housley to her couch. At that time, Mary Bates noticed Mrs. Housley was "wet" in the vaginal area, and she told Mrs. Housley she thought her water bag had "burst."
Defendants offered no direct evidence contradicting plaintiffs' contention that Mrs. Housley actually fell down the stairs. Instead, defendants relied solely on documentary and testimonial evidence which, they contend, inferentially establishes the premature rupture of Mrs. Housley's water bag was not caused by a fall. Defendants place primary emphasis on the medical records of the Jo Ellen Smith and F. Edward Hebert emergency rooms. None of these records mentions a complaint of a fall or any objective manifestations of injury which would be consistent with a fall of sufficient force to cause the rupture of Mrs. Housley's water bag. Additionally, one of the F. Edward Hebert emergency room nurses, Elizabeth Abajian, testified she was the staff nurse on the night Mrs. Housley was admitted. She testified her job was to take the history of a patient as she is admitted to the emergency room and to record any pertinent information on the patient's medical chart. She stated Mrs. Housley did not complain of a fall when she was admitted and that she certainly would have recorded such a complaint had one been made. Nurse Abajian also testified she did not find any bruises on Mrs. Housley's abdomen or any other physical manifestation of injury that would be consistent with a fall of sufficient force to cause Mrs. Housley's water bag to burst. Dr. Cullotta, an expert obstetrician-gynecologist, testified that if a woman's water bag is ruptured because of trauma one would expect to see bruising of the abdominal muscle, which was not present in Mrs. Housley's case.[2]
In addition to the medical records, defendants rely on Mrs. Housley's health insurance claim forms. The Housleys sent in several claim forms in an attempt to procure payment from the insurance company of the expenses arising out of Vickie's birth. On the first form, dated September 23, 1982, under the section entitled "diagnosis or nature of illness or injury," Mrs. Housley wrote "pregnancypremature rupture of membranes fetal distresspremature labor Caesarean section." On the next page of the form, under the sections entitled "date and time injury occurred" and "briefly describe how, when and where injury occurred," nothing is written. On October 6, 1982, the Housleys received a letter from the insurer denying coverage because the pregnancy was a pre-existing condition. The Housleys submitted another claim form dated January 25, 1983. On this form, in the section entitled "briefly describe how, when and where injury occurred," the following is typed: "Mrs. Vickie Housley slipped and fell down stairs in her home." After the insurance company again denied coverage, the Housley's attorney, on March 25, 1983, sent a letter to Ewell Potts, III, the apartment manager, notifying him of the fall and requesting that the owners' insurer contact him. Based on this information, defendants argued at trial that the Housley's fabricated the story of a fall to induce Dr. Cerise's liability insurer to pay for the expenses associated with Vickie's birth.
*978 Applying the two-part analysis for appellate review of fact as explained in Mart, supra, we believe the court of appeal correctly determined the trial court was not manifestly erroneous in finding Mrs. Housley actually fell down the stairs. The testimony of Mrs. Housley and the corroborating eyewitness testimony of Mary Bates certainly constitute a "reasonable factual basis for the finding of the trial court." Further, after exhaustively reviewing the record, we are satisfied that, taken as a whole, the record establishes the trial court's finding is not manifestly erroneous. Although we are not convinced we would find a fall actually occurred if it were our function to decide the issue de novo, we cannot say the trial judge's finding was manifestly erroneous. The circumstantial documentary evidence relied upon by defendants simply is not compelling enough to conclude no reasonable trier of fact would have credited Mrs. Housley's and Mary Bates' testimony.
As to the absence of a complaint of a fall in the emergency room records, the trial court noted the emergency room medical records contained obvious errors, including the statement that Mrs. Housley was "at term" when she was brought into the emergency room.[3] One of defendants' own experts, Dr. Cullotta, testified Mrs. Housley's medical records were so "sloppy" that Dr. Labadie would have a difficult time defending himself in a malpractice suit. In addition, Dr. Guimond, the Jo Ellen Smith Hospital Emergency Room physician who first examined Mrs. Housley, stated "we probably did not ask her specifically if she had fallen and that was how she ruptured the water bag." Although Nurse Abajian testified she normally inquires as to the circumstances which caused a person to check into the emergency room, both Mr. and Mrs. Housley testified they spoke with several nurses at the Hebert Emergency Room. Mrs. Housley stated she remembers telling one of the nurses about the fall, but she could not remember which nurse. However, not all of the nurses who examined Mrs. Housley on June 5, 1982 testified at trial. Therefore, it is entirely plausible that the Housleys mentioned the fall to one of the other nurses who was present and the nurse either failed to record the complaint or did not mention it to Nurse Abajian.
Similarly, the evidence concerning the Housleys' health insurance claims is not of sufficient weight to render the trial court's finding, based primarily on the testimony of Mrs. Housley and Mary Bates, manifestly erroneous. The first claim form submitted by the Housleys mentions the premature rupture and simply fails to mention the cause of the premature rupture. The Housleys were not questioned at trial as to why they failed to mention the fall on the first claim form, so we do not have their explanation for the omission. Nevertheless, we do not find it implausible that the Housleys merely overlooked this line on the claim form. In any event, such an omission surely would have been a thin reed upon which to rest a finding of manifest error.[4]

II.
We now consider the question of whether or not plaintiffs met their burden of proving the fall caused the premature rupture of Mrs. Housley's water bag.[5] The trial court found that plaintiffs proved causation, but the court of appeal reversed. After reviewing the record in its entirety, we find the record supports the factual finding of the trial court, and hold that the court of appeal erred in reversing. When the medical testimony is considered in light *979 of the temporal relationship between Mrs. Housley's fall and the bursting of her water bag, the trial court's conclusion that plaintiffs proved causation by a preponderance of the evidence was not manifestly erroneous.
Whether an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error. Mart v. Hill, supra. In this case, plaintiffs' evidence on the issue of causation consisted of expert medical testimony, evidence of Mrs. Housley's health prior to the fall, and evidence of the temporal relationship between Mrs. Housley's fall down the stairs and the premature rupture of her water bag. The court of appeal, in reversing the trial court, focused exclusively on the testimony of Dr. Labadie and determined that his testimony was insufficient to prove causation by a preponderance of the evidence. In so doing, the court erred by failing to consider all of the evidence of causation in the record.
The testimony of several medical expert witnesses, either in the form of deposition or trial testimony, was introduced into evidence in this case. Although not all of the expert testimony is consistent, the experts agreed a fall can cause the premature rupture of a pregnant woman's water bag. Dr. Guimond, whose deposition was introduced into evidence, stated a fall does not necessarily have to be a major fall for it to rupture a woman's water bag. Dr. Labadie, when asked whether a fall can cause the rupture of a water bag, answered "as a possibility, yes." Furthermore, when asked a hypothetical question which relied on assumptions later found by the trial court to be fact, Dr. Labadie stated he "would have to consider [Mrs. Housley's fall] as a contributing factor" of the premature rupture of her water bag. Dr. Cullotta, who did not personally examine Mrs. Housley but who examined her medical records prior to trial, testified he did not believe the rupture was caused by a fall. However, he did admit trauma can cause the membrane to rupture.
In addition to the expert testimony that a fall can cause the rupture of a woman's water bag, plaintiffs offered evidence of Mrs. Housley's physical condition prior to the fall and immediately after the fall. Prior to the fall, Mrs. Housley visited Drs. Labadie and Astilla[6] on three occasions: March 22, 1982, April 21, 1982 and May 24, 1982. Dr. Labadie did not have an independent recollection of Mrs. Housley's visits, but he examined his records and testified as to what the records indicated. At the March 22 visit, Mrs. Housley was approximately 16 weeks pregnant and there were no signs of complication. At the April 21 visit, Mrs. Housley complained of "super pubic pain and discharge." Dr. Labadie diagnosed the condition as a mild bladder infection and prescribed medication. On May 24, Mrs. Housley was examined by Dr. Astilla. He conducted a urinalysis and determined that Mrs. Housley's bladder infection had cleared. He also performed a fetal non-stress test, which revealed no complications.
Immediately after falling on the stairs, Mrs. Housley noticed a watery discharge from her vagina. Mary Bates testified the discharge was of sufficient amount that Mrs. Housley was compelled to change her undergarments. After Mrs. Housley was brought to her couch, she called Dr. Labadie's office to relate her fall. She was instructed to remain horizontal with her legs elevated. Several hours later, after Mr. Housley returned home from work, Mrs. Housley was taken to the hospital. Her water bag was found to have ruptured. Because Mrs. Housley was only in the early stages of her seventh month of pregnancy, Dr. Labadie wanted to delay delivering the baby as long as possible. However, on June 9, 1982, only four days after Mrs. Housley was brought to the emergency room, Dr. Labadie decided to perform an emergency caesarean section. Dr. Labadie testified unequivocally that the premature *980 caesarean section was performed because of the premature rupture of Mrs. Housley's water bag.
In Lukas v. Insurance Company of North America, 342 So.2d 591 (La.1977), this Court stated:
[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
Id. at 596. See also, Simpson v. Caddo Parish School Board, 540 So.2d 997 (La. App. 2nd Cir.1989); Petersen v. State Farm Auto Insurance Company, 543 So.2d 109 (La.App. 3rd Cir.1989); Wisner v. Illinois Central Gulf Railroad, 537 So.2d 740 (La.App. 1st Cir.1988). We find this principle to be applicable in the present case. Dr. Labadie's medical records show that Mrs. Housley was in good health eleven days prior to the fall. She had visited his office on three occasions and, aside from a minor bladder infection, there were no signs of any complications. Immediately after the accident, Mrs. Housley noticed a significant amount of watery discharge. Several hours later, her water bag was diagnosed as having ruptured prematurely. Clearly, the immediate discharge of fluid after Mrs. Housley fell on the stairs is persuasive evidence that the fall, in fact, caused her water bag to rupture.
Defendants argue the presumption of causation is inapplicable in this case because plaintiffs failed to prove, through medical evidence, a "reasonable possibility of a causal connection" between the fall and the rupture of Mrs. Housley's water bag.[7] We disagree. Dr. Labadie, when asked a hypothetical question conditioned on circumstances later found to be fact by the trial court, stated "I would have to consider [the fall] as a contributing factor" of the premature rupture of Mrs. Housley's water bag. Assuming arguendo the court of appeal was correct when it found Dr. Labadie's testimony, alone, is not sufficient to meet the "preponderance" standard, we believe the testimony is clearly sufficient to establish a "reasonable possibility" of a causal connection between the fall and the rupture of the water bag, especially in light of the unanimous expert testimony that trauma can cause a woman's water bag to burst.
Additionally, we are concerned by the apparent lack of deference the court gave to the trial court's interpretation of Dr. Labadie's testimony. Even if the presumption of causation involved in Lukas were not applicable in this case, we would be reluctant to overturn the trial court's finding of causation given the testimony of Dr. Labadie, Mrs. Housley's treating physician. Although it is true that in a personal injury lawsuit the plaintiff bears the burden of proving it was "more probable than not" his injury was caused by trauma suffered in the accident, it is not necessary for the plaintiff's medical witness to recite the proper legal jargon verbatim before the trial court can properly rely on his testimony. Appellate courts should look to the substance of a witness's testimony to determine whether the trial court was manifestly erroneous in finding that it establishes causation by a preponderance of the evidence. Furthermore, the appellate court must keep in mind that the trial court is in the best position to interpret the substance of the witness's testimony in light of his mannerisms and inflection of voice. Dr. Labadie's statement that he "would have to consider [the fall] a contributing factor" to the rupture of Mrs. Housley's water bag is *981 subject to several interpretations depending on how Dr. Labadie made the statement. The trial judge, who observed and heard Dr. Labadie, was satisfied his testimony was the functional equivalent of saying the fall "more probably than not" caused the rupture of the water bag. The court of appeal, to support its contention that Dr. Labadie's testimony was insufficient to establish medical causation, summarized his testimony as follows: "Dr. Labadie testified only that a fall ... could have been considered a contributing factor." We find the court's characterization of Dr. Labadie's testimony inaccurate, and believe it suggests the court was interjecting its own interpretation of the testimony rather than determining whether the trial court's interpretation was reasonable.
Consequently, we find the record supports the trial court's finding that Mrs. Housley's fall caused the premature rupture of her water bag. This finding of causative fact is subject to the same standard of appellate review as was the factual determination of whether Mrs. Housley actually fell down the stairs. The court of appeal, by failing to consider the evidence of Mrs. Housley's physical condition prior to the fall and the close temporal relationship between the fall and the rupture of her water bag, erroneously reversed the trial court's finding of causation.

CONCLUSION
For the reasons stated above, the judgment of the court of appeal is reversed. Defendants have neither briefed nor argued before this Court the quantum established by the trial court. Without this being made an issue, we will not remand to the court of appeal for a review of that aspect of the case, as we would normally do when the issue was not reached below. Reinstatment of the trial court judgment on both liability and quantum is thus ordered.
REVERSED. TRIAL COURT JUDGMENT IS REINSTATED.

ON APPLICATION FOR REHEARING
PER CURIAM.
Defendants contend in their application for rehearing that they contested the quantum of the district court's judgment both in the court of appeal and in this court. Seemingly, the issue was not raised in this court. It was not assigned as error, nor was it briefed or argued. In any event, because the court of appeal did not reach the quantum issue, and out of deference to the correction of a possible oversight, we remand the case to the court of appeal to review the unreached assignment of error.
Accordingly, the application is granted in part, and the case is remanded to the court of appeal to review defendants' contention that the amount of the award was excessive. Otherwise, the application is denied.
NOTES
[1] This amount includes $400,000 in favor of the minor for past and future pain and suffering, mental anguish, permanent physical and intellectual disabilities, and loss of earning capacity; $55,552.58 in favor of William Housley for past and future medical expenses; and $35,000.00 in favor of Mrs. Housley for her physical and emotional pain and suffering.
[2] Dr. Cullotta did not examine Mrs. Housley. His conclusion that Mrs. Housley's abdominal muscle did not show any signs of bruising was based on his review of her medical records.
[3] In fact, Mrs. Housley was only in her 26th week of pregnancy on June 5, 1982.
[4] It is pertinent to note that the Housley's attached to their second insurance claim form a letter by Dr. Labadie, Mrs. Housley's treating physician, in which Dr. Labadie stated that Mrs. Housley was admitted to F. Edward Hebert's emergency room on June 5, 1982 complaining of a fall which caused the premature rupture of her water bag. Although Mrs. Housley asked Dr. Labadie to write the letter, one might expect him to have declined had he believed otherwise.
[5] There is no dispute that the premature rupture of Mrs. Housley's water bag caused the premature birth of Vickie.
[6] Dr. Labadie was Mrs. Housley's treating gynecologist. However, Dr. Astilla and Dr. Labadie are in practice together, and Mrs. Housley was examined by Dr. Astilla on one occasion when Dr. Labadie was not available.
[7] Defendants also argue that the presumption is inapplicable because the evidence shows Mrs. Housley was not in good health prior to the fall. To support this contention, defendants point to the results of a culture taken from Mrs. Housley on June 9, 1982. The lab report states Mrs. Housley was suffering from "heavy growth streptococcus pneumonia." However, this culture was taken four days after Mrs. Housley's water bag had broken. Defendants own expert, Dr. Cullotta, testified that it is not uncommon for a woman to develop infection after her water bag has broken.