# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-926

**DAVID CUPSTID AND BONNIE ROBERTS CUPSTID**

**VERSUS**

**FERDELL N. HARRIS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 49592
HONORABLE JOHN C. REEVES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JONATHAN W. PERRY
## JUDGE

Court composed of D. Kent Savoie, Candyce G. Perret, and Jonathan W. Perry, Judges.

**AFFIRMED.**

**Joseph A. Boothe**
**Smith, Taliaferro & Purvis**
**Post Office Box 298**
**407 Mound Street**
**Jonesville, Louisiana  71343**
**(318) 339-8526**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Ferdell N. Harris**


**Paul H. Benoist**
**BENOIST LAW OFFICES**
**329 Market Street**
**Natchez, Mississippi  39120**
**(601) 445-4148**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **David & Bonnie Cupstid**

**PERRY, Judge.**

The defendant in this possessory action, Ferdell N. Harris ("Harris"), appeals from a trial court judgment maintaining the plaintiffs, David and Bonnie Cupstid (hereinafter "David" and "Bonnie," individually, and collectively, "the Cupstids"), in possession of a small parcel of land[1] located in Ferriday, Louisiana (hereinafter referred to as "the property"). For the following reasons, we affirm.

## FACTS

On October 29, 2015, the Cupstids filed a possessory action against Harris pursuant to La.Code Civ.P. art. 3655, asserting claims they possessed as owners a real right in the property. The Cupstids alleged they possessed the property as owners continuously and without interruption from February 1, 1985, until Harris disturbed their possession on July 24, 2015. The Cupstids' lawsuit also sought an injunctive order to prohibit Harris's interference with their possession of the property during the pendency of this litigation.

In response, on October 16, 2015, Harris filed an answer generally denying the Cupstids' allegations. Harris admitted a survey, dated February 9, 2015, was performed by Richard T. Logan and that "a survey crew, on behalf of [Harris], did set down survey stakes . . . on or about July 24, 2015, consistent with the earlier staking performed by a survey crew on behalf of [Harris] prior to February 1, 2015."

The parties entered into a consent judgment on the preliminary injunction on January 14, 2016, wherein it was agreed Harris would not interfere with the existing fence and septic tank on the property during the pendency of the litigation. The matter was tried on December 11, 2017, with judgment rendered March 6, 2018,

---

[1] The Cupstids, in brief, maintain the parcel is roughly 160 feet by 140 feet (6,400 square feet or .14692 acre). The property is situated on the southeast border of property the Cupstids purchased via Cash Sale Deed dated December 17, 1996, following a 140-month lease with purchase option, which began February 1, 1985.

recognizing the Cupstids' right to possession of the property.[2] The judgment further ordered that pursuant to La.Code Civ.P. art. 3662, Harris is to assert his adverse claim of ownership of the property in a petitory action within sixty days after the trial court's judgment becomes executory.

A motion for new trial, filed by Harris on March 16, 2018, and heard by the trial court on May 17, 2018, was denied. Judgment denying Harris's motion for new trial was signed May 29, 2018.

Harris appeals. He alleges the trial court erred in recognizing and maintaining the Cupstids' right to possess the immovable property in dispute.

## STANDARD OF REVIEW

Appellate courts apply the manifest error standard of review to the trial court's ruling in a possessory action. *Allen v. Belgard*, 05-1284 (La.App. 3 Cir. 4/5/06), 925 So.2d 1275. Our review must apply a two-tier test in order to reverse the findings of the trial court: (1) "the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court," and (2) "the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous)." *Id*. at 1282 (quoting *Mart v. Hill*, 505 So.2d 1120 (La.1987)).

> Even where the appellate court believes its inferences are more reasonable than the fact finder's, reasonable determinations and inferences of fact should not be disturbed on appeal. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). Additionally, a reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housley v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts.

---

[2] Attached to the trial court's judgment were three exhibits, which showed the property was "immediately adjacent to the Cupstid residence and including the area of the existing fence, septic tank, field line, satellite dish, and tree planted by [the Cupstids.]"

2

*Allen*, 925 So.2d at 1282.

## LAW AND DISCUSSION

The Louisiana Code of Civil Procedure and the Louisiana Civil Code address the possessory action through various articles. Under La.Code Civ.P. art. 3655, a possessory action is an action "brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted." As pointed out in La.Code Civ.P. art. 3656, "[a] plaintiff in a possessory action shall be one who possesses for himself. A person entitled to the use or usufruct of immovable property, and one who owns a real right therein, possesses for himself."

Under La.Code Civ.P. art. 3658, to maintain the possessory action, the plaintiff must allege and prove:

> (1) He had possession of the immovable property or real right therein at the time the disturbance occurred;

> (2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;

> (3) The disturbance was one in fact or in law, as defined in Article 3659; and

> (4) The possessory action was instituted within a year of the disturbance.

The question before this court is whether the trial court was correct in ruling the Cupstids' possession was not precarious. Harris disputes the nature of the Cupstids' possession of the property, arguing the Cupstids' possession of the property was by virtue of permission from the property's prior owner, J. T. Jacobs. Harris asserts the Cupstids are precarious possessors and, as such, are unable to acquire a right to possess the property. Thus, he contends the Cupstids did not meet

3

the one-year requirement of La.Code Civ.P. art. 3658(2) because the possession indicated was merely precarious and not sufficient to support a possessory action.

The Louisiana Civil Code defines "possession" as "the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name." La.Civ.Code art. 3421. With regard to the concept of possession as contemplated in possessory actions, La.Civ.Code art. 3424 provides "one must intend to possess *as owner* and must take corporeal possession of the thing." (Emphasis added). "One is presumed to intend to possess as owner unless he began to possess in the name of and for another." La.Civ.Code art. 3427.

A precarious possessor is one who exercises "possession over a thing with the permission of or on behalf of the owner or possessor[.]" La.Civ.Code art. 3437. A precarious possessor is presumed to possess on behalf of another even if he intends to possess for himself. *See* La.Civ.Code art. 3438. As reflected in La.Civ.Code art. 3439, a precarious possessor "commences to possess for himself when he gives actual notice of this intent to the person on whose behalf he is possessing." With regard to acquisitive prescription, La.Civ.Code art. 3478 contains a similar requirement, stating that a precarious possessor "may commence to prescribe when he gives actual notice to the person on whose behalf he is possessing that he intends to possess for himself."

Harris asserts the trial court's ruling in this case violates La.Civ.Code art. 3440, which provides, "Where there is a disturbance of possession, the possessory action is available to a precarious possessor, such as a lessee or a depositary, *against anyone except the person for whom he possesses*." (Emphasis added). Harris alleges he is J.T. Jacobs's successor in title and, as such, he is now the person for whom the Cupstids possess. Harris alleges the Cupstids have not

given him actual notice of their intent to possess as owners, as La.Civ.Code art. 3478 requires; therefore, he contends the Cupstids have no right to assert a possessory action against him.

In brief, Harris claims that at trial, David and his brother, Richard Cupstid ("Richard"), "both offered uncontroverted testimony that the Cupstids began their possession of the disputed property with the permission of the then-owner of the property, Mr. Jacobs." He further urges that since the Cupstids "were in fact precarious possessors for Mr. Jacobs, their intent to possess for themselves would be irrelevant as they are presumed to possess in his name, and the name of his successors in title [which includes Harris]." Thus, Harris argues the Cupstids, as precarious possessors, cannot avail themselves of the possessory action against the person in whose name they possess.

The Cupstids refute Harris's contention that they simply had Mr. Jacobs's permission to possess the property; instead, they allege Mr. Jacobs gave them the property. According to the Cupstids, about six months after moving into their home adjacent to the property, Mr. Jacobs approached David while he was constructing a fence. Mr. Jacobs said he was giving the Cupstids the property, instructing David to include the property within the fenced enclosure which is situated on the southeast border of the Cupstids' purchased property. The Cupstids allege, in brief, that their trial witnesses corroborated "what amounts to not less than an oral, onerous donation with a[n] obligation placed on the donees under La.Civ.Code art. 1526, or an oral contract of sale of property by J.T. Jacobs to David and Bonnie Cupstid, who accepted the property and shook hands with Mr. Jacobs."

The Cupstids strongly deny ever possessing the property for anyone other than themselves. Thus, they dispute they were required to give Harris actual notice of

5

their intent to possess the property as owners. The Cupstids assert since 1985 their possession of the property has always been as owners.

During the presentation of the Cupstids' case, Richard testified he was helping David build the fence to enclose the Cupstids' purchased property when Mr. Jacobs arrived and "said something about it was okay for David and Bonnie to take in whatever they needed; thirty (30) foot, thirty-five (35) foot, whatever he thought they needed of that land and use as their own." According to Richard, Mr. Jacobs explained he was giving the Cupstids the property due to the changes in Black Bayou, which required the road to be moved and which, in turn, affected property boundaries.

Likewise, David testified that as he was building the fence in 1985:

Mr. Jacob[s] had stopped and we was [sic] talking about it, and he had told me that since they had put the road in on my -- on the other part of my property, for us to move the fence over toward the field further. And he kind of basically walked it off and he said he was donating that to me, that he owned it and for the difference of the road and that's the reason why we put the fence where we put it.

David asserted he has possessed the property by mowing the grass, hauling in dirt, building and repairing the fence, replacing the septic tank and maintaining its field line, installing a satellite dish, and even planting a tree on the property. The Cupstids allege Mr. Jacobs knew the original septic tank was actually located on the property and was not on the Cupstids' purchased property. The septic tank had been installed on the property by Carl Chandler, a prior owner of the Cupstids' purchased property. The Cupstids' heating, ventilation, and air conditioning outdoor unit and above-ground swimming pool were also located on the property at one time.

Bonnie's testimony at trial is also noteworthy. Bonnie explained on February 1, 1985, she and David began leasing property they would eventually purchase for a term of 140 months at $500 per month. The lease ended on October 1, 1996, after

which Bonnie and David exercised their option to purchase by executing a Cash Sale Deed on December 17, 1996.

Recalling the day in 1985 when the fence was being built and the conversation with Mr. Jacobs occurred, Bonnie testified:

> I had seen Mr. Jacob[s] out there with my husband and his brother, and I had walked out there and was listening to some of the conversation. And then he plain as day told us, he said, I am giving you all this portion of the land because I had to give the parish your other portion for a right-of-way for the road. So I am giving this to you; and I shook Mr. Jacob[s's] hand.

On July 24, 2015, Bonnie witnessed a survey crew setting down stakes on the property. The Cupstids then received a certified letter from Harris on September 28, 2015, demanding the removal of the Cupstids' fence and septic tank from the property. The Cupstids filed the instant lawsuit on October 29, 2015.

During his rebuttal to the Cupstids' case, Harris testified he purchased 15.905 acres from the heirs of Mr. Jacobs in July 2000. Harris, however, was not present at the sale; instead, his mother finalized the purchase on his behalf. Harris testified at trial it was not until 2008 that he returned to the property and it was not until December 2014 that he had the property surveyed.[3] Incredibly, Harris testified there was no fence erected as of 2000, even though he was not in Louisiana, and he claimed the Cupstids built the fence in 2008.

Our review of all the evidence before the trial court disproves Harris's characterization that there was "uncontroverted testimony that the Cupstids began their possession of the disputed property with the permission of the then-owner of the property, Mr. Jacobs." We, as did the trial court, find nothing which disproves the Cupstids' attestations they possessed the property as owners since 1985. The

---

[3] It is this survey which seemingly set in motion the chain of events which necessitated the instant possessory action.

trial court clearly considered the Cupstids' testimony genuine, ruling their possession was not precarious. We also note that Richard, not a party to these proceedings, presented eyewitness corroboration to what could otherwise be perceived as self-serving testimony from the Cupstids.

Based on the record before us, we find the trial court's evaluations of credibility and inferences of fact are reasonable. Therefore, we find no clear or manifest error in the trial court's factual findings relative to the Cupstids' possession, and we affirm the trial court's judgment in this possessory action, which maintains the Cupstids in possession of the property.

## DECREE

The trial court judgment in favor of Plaintiffs, David and Bonnie Cupstid, is affirmed. All costs of this appeal are assessed to Defendant, Ferdell N. Harris.

**AFFIRMED.**