CRAIN, Judge.
Linda Trammel, a guest passenger in a vehicle owned and operated by her aunt, Shirley Hodge sued Ms. Hodge and her insurer, the Tangipahoa Parish Council, as the custodian of the roadway; General Motors Corporation, as the manufacturer of the vehicle’s seat belts, and plaintiff’s uninsured motorist carrier for injuries she claims she sustained, on April 23,1987, when the vehicle in which she was riding allegedly struck a “pothole” on South Thibodeaux Road in Poncha-toula, Louisiana. In a bifurcated trial[1] judgment was rendered in favor of the appellees and against the plaintiff, dismissing her suit. Plaintiff and defendant, General Motors, appeal. In a single assignment of error the plaintiff appeals the jury verdict. Defendant, General Motors, seeks an award of expert fees. We affirm the judgment of the trial court.
The primary issue presented for our review is whether the jury erred in its findings that plaintiff was not injured in the alleged automobile accident which is the subject of this lawsuit.
The facts out of which this alleged accident arose are reflected in the record as follows:
On the date of this incident, April 23,1987, Shirley ^Hodge had travelled from her home on Sharp Road in Ponchatoula, Louisiana to the near-by home of her brother. The vehicle being operated at the time in question was a 1978 Cadillac, equipped with front-seat lap and shoulder belts. Ms. Hodge had left her brother’s house to return home when this incident occurred. She had been joined by her niece, Linda Trammel, who was a guest passenger seated in the front seat of Ms. Hodge’s vehicle. Plaintiff testified she was wearing the seat/shoulder belt around her at the time of the alleged accident.
Shortly before this accident, the couple was engaged in conversation, with the driver and passenger periodically glancing at each other as they spoke. The roadway was dry; it was late afternoon and the driver was proceeding at the rate of approximately 45 miles per hour in a southerly direction on South Thibodeaux Road. The vehicle, in which the pair was riding, allegedly struck a hole in the surface of the roadway. The hole was described as being the size “of a 50 gallon drum” (in diameter) and having a depth of approximately “8 to 9 inches”. According to Ms. Hodge, at the time of impact, her car hood suddenly opened and she applied her brakes. The doors to the car were jammed closed by the impact. The car rolled and then stopped. Ms. Hodge indicated that *519 she did not see the hole in the roadway because she was engaged in conversation with, and looking at her niece, at the time of this incident. She admitted that she could have gotten around the hole if she had seen it. She also indicated that she had travelled this road before the date of the accident and was familiar with the general condition of this road, but she did not previously notice the hole. Ms. Hodge indicated that she did not receive assistance after the accident because no one was on the road. No report of the incident was made to the Parish and the record does not indicate that an accident report was filed.
According to Ms. Trammel, at the time of impact, the car’s safety belt did not restrain her and she was injured when her hands struck the vehicle’s dashboard. Although she lived in the vicinity of the road, Ms. Trammel stated that this was not a road Igwith which she was familiar. She had trav-elled down this road once, long ago. She did, however, know that the hole in the road was filled three days after this alleged incident.
On appeal, plaintiff contends that the jury erred in finding that she did not suffer injuries from this alleged automobile accident. We cannot agree.
In the recent Louisiana Supreme Court decision of Stobart v. State of Louisiana, Through Department of Transportation and Development 617 So.2d. 880 (La., 1993) the court discussed, in detail, the standard by which we review a trial court’s findings of fact. In Stobert, id. at 882-883 the Supreme Court stated:
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong.’ Rosell v. Esco, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding Id. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly -wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. See generally, Cosse v. Allenr-Brad-ley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or | objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Hous-ley v. Cerise, 579 So.2d 973 (La.1991) 0quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
This court has recognized that ‘[t]he reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses *520 (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.’ Canter v. Koehring Co, 283 So.2d 716 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
The following evidence exists concerning the alleged pothole and resultant “accident”.
Three parish employees of Tangipahoa Parish testified concerning the condition of the roadway where this accident allegedly occurred.
Preston Wier, the Tangipahoa Parish Finance Director, testified that the parish maintains the roadway known as South Thi-bodeaux Road. He stated that no calls were received on or before April 23, 1987, with regard to the existence of a pothole which needed repair on that roadway. He further stated that, if a complaint is received, a complaint form is executed and the matter is put on a schedule for repair. The normal length of time for such a repair is one to two weeks. However, if it is a dangerous pothole the crew will go out right away to repair it. These matters are handled by Bennie Simmons, the road superintendent.
Mr. Bennie Simmons, the parish road superintendent testified that he served in that capacity on the date of the alleged accident and he was familiar with the condition of South | ^Thibodeaux Road at that time. He stated that, generally, the road was rough from having been patched, but the holes were always “taken care of’. He further stated that as soon as a complaint was received, he or the foreman would ride the road in order to check it and place it on a schedule for repair. However, if it were an emergency, the matter would be taken care of right away. Mr. Simmons also stated that a hole 2⅜ to 3 feet wide and 8 inches deep would be considered an emergency and would be repaired immediately; even if he had to work crew members overtime. Mr. Simmons had no knowledge of any complaint concerning this pothole.
Leroy Booker, the parish road supervisor (formerly the road foreman) also testified. He stated that he had been the road foreman on April 23, 1987, and was responsible for seeing that work on the roadways was properly performed. He would receive his work orders, in the form of a road complaint, presented by the road foreman. He stated that there are areas that are heavily patched on South Thibodeaux Road. There was no request for a repair of a pothole on this road on the date of this alleged accident.
It is clear from the record that this jury could have reasonably found that this alleged accident did not occur. The testimony of the parish employees in charge of the maintenance of this roadway was uniformly to the effect that no complaint of a pothole in the area of this alleged accident was received on the date of the accident, nor before that time. Additionally, defendant Hodge admitted that, even following the accident, she did not report the need for repair of the pothole to the Parish. Furthermore, the absence of any witnesses to the accident, (except for plaintiff and her aunt), as well as the absence of a police investigation of the incident could have lead this jury to reasonably find that the alleged accident did not occur. There is a reasonable factual basis for this finding and we cannot say that such a finding is clearly wrong.
Additionally, the following evidence concerning the accident and its relationship to plaintiffs injuries is revealed by the record:
I ^Plaintiff, Linda Trammel, testified that on the date in question she was a passenger in her aunt’s car. Ms. Trammel was turned in the front passenger seat, with her upper body facing the vehicle’s driver, Ms. Hodge. According to Ms. Trammel the vehicle was travelling at a speed of 40 to 50 miles per hour on South Thibodeaux Road and these parties were talking at the time the vehicle hit a pothole in the road. The plaintiff testified that, at the moment of impact, she went forward and hit the dashboard with both hands. According to Ms. Trammel, as the brakes were applied she was thrown forward and again hit the dashboard, however, this time the impact was less forceful. Ms. *521 Trammel stated that although the safety belt held her the first time she went forward, the second time this happened, the belt was loose.
The only other witness to the accident who testified was Shirley Hodge, the defendant-driver.[2] She corroborated the plaintiffs story as to the occurrence of the accident.
With regard to the injuries allegedly sustained by her niece in the accident, Ms. Hodge stated that her nieces’ hands were extended towards the dash board, but she could not remember if she saw her niece as she extended her hands or if she saw her afterwards. On cross-examination, plaintiff stated that she did not see the position of the defendant at the time of impact because she was not looking at her at that time. Ms. Hodge said her niece did not complain at the time of the accident. She also testified that after the accident she was told that the seat-belt was broken, but she did not know whether the seat or seatbelt was broken.
The plaintiff further testified that as a result of the accident her hands were “a little stiff and sore, but not the numbness and the pain.” She indicated that she did develop numbness in both hands after a period of between a week to ten days. She also complained of pain in her right shoulder.
The plaintiff first visited Dr. Robert McAf-ee, an ^orthopedic surgeon, on May 1, 1987. She related to him that she had been involved in an automobile accident wherein she hit her hands on the dashboard and the impact also caused her to end up with her shoulders lodged between the dashboard and the door. She complained of tenderness in her shoulder and numbness in three fingers of her right hand. The results of neurological exam of the hand by Dr. McAfee were normal. There were normal reflexes and range of motion in the shoulder. Dr. McAfee had Ms. Trammel’s right shoulder x-rayed. He prescribed an anti-inflammatory drug and a splint to be worn on her right hand. She also underwent physical therapy and ultrasound treatment. On her second visit to Dr. McAfee, the plaintiff was referred to Dr. Tim Frederick for neurological studies. Dr. Frederick diagnosed her condition as carpal tunnel syndrome. Surgery was recommended to release the nerve.
On June 24,1987, Dr. McAfee performed a one-half hour surgery on the plaintiff’s right hand under general anesthesia. She received treatment of the right hand until September, 1989 when she was discharged with regard to this hand. She was found to have a 15% partial disability in the right hand.
In February, 1988, plaintiff complained of similar problems in the left hand. Neurological tests revealed plaintiff was suffering from carpal tunnel syndrome, moderately severe, in her left hand. She underwent surgery under local anesthesia, for this condition, on April 10, 1988. She continued to be treated for this condition in the left hand until July 23, 1991.
Dr. McAfee was of the opinion that carpal tunnel syndrome is caused by disease or trauma. He stated that specific trauma to the wrist of hyperextension or direct trauma (whether of the type that causes dislocation or repetitive minor trauma), inflammation from conditions such as arthritis, or disease, such as diabetes, can cause carpal tunnel syndrome. According to Dr. McAfee, the condition is basically caused by something in the wrist area which compresses the nerve. Dr. McAfee felt the condition in the plaintiff was “most likely due to the accident” in question. igHowever, he said he would defer to the neurologist as to its etiology, especially with regard to the left wrist, because of the extended time span for the manifestation of symptoms.
Dr. Tim Frederick, the neurologist who treated the plaintiff and diagnosed her as suffering from carpal tunnel syndrome, related a history given by the plaintiff wherein she allegedly stated that she had been driving when she hit a large pothole.
Dr. Frederick’s testimony indicates that any action of the hand that creates a stretching of the wrists can cause carpal tunnel syndrome. He stated that if one’s occupation calls for repetitive action, it can predispose a person to carpal tunnel. He also stated that persons who are heavier, such as plaintiff *522 was, are predisposed to the condition. According to Dr. Frederick, if the condition is caused by trauma he would expect the symptoms to be manifested within a few days of the occurrence of the trauma. He had no notes of any arm, neck, or shoulder pain with regard to the plaintiff.
There is a reasonable basis, supported by the evidence in this case, for the jury to have found that the accident did not cause plaintiffs physical problems.
Although plaintiff complained of injury to her shoulder, upon examination by her orthopedist, she manifested normal reflexes and range of motion. Additionally, her neurologist had no notation of plaintiff suffering from pain in her shoulder, neck or arm.
Furthermore, with regard to the condition of carpal tunnel syndrome, the expert testimony does not establish the probability that this accident caused these injuries.
Although Dr. McAfee testified that there was a likelihood that this was the cause for the condition, he nevertheless deferred to Dr. Frederick, the neurologist, as to the etiology of the condition.
Dr. Frederick did not establish the cause of plaintiffs injuries. Rather, he and Dr. McAfee were in agreement that the condition of carpal tunnel syndrome can result from various causes, Rand not just from trauma. Additionally, Dr. Frederick was of the opinion that if trauma caused the condition, the symptoms would have appeared within a few days of the accident, which was not the case here with the left hand.
Since there are various causes of carpal tunnel syndrome and there was a time delay in the manifestation of the plaintiffs symptoms the jury had a reasonable basis from which to conclude that this condition was not caused by this alleged accident.
Under the circumstances of this case we cannot say that the jury’s finding concerning causation is manifestly erroneous or clearly wrong. Stobart, id.
Finally, in answer to this appeal defendant General Motors seeks amendment of the trial court judgment to provide expert fees for two of its witnesses. General Motors argues that the trial court erred when it failed to assess these expert fees. It relies upon the mandatory language of Louisiana Revised Statute Title 13, Section 3666 in seeking redress of this grievance.
The award of expert fees as a cost to be paid by the party cast in judgment rests within the sound discretion of the trial court. La.C.C.P. Art. 1920. Fireman’s Fund Ins. Co. v. Moore, 432 So.2d 374 (La.App., 1st Cir., 1983). In the event such fees are allocated by the court, as a cost to be paid by the party east in judgment, the court shall fix the amount of compensation in accordance with the dictates of Louisiana Revised Statute, Title 13, Section 3666.
In the present case the court refused to assess expert witness fees as costs against the party cast in judgment (i.e., plaintiff) and accordingly, did not determine the amount of expert fees to be paid by defendant, General Motors to its two expert witnesses. This matter was within the sound discretion of the trial court judge and, under the circumstances of this case, we find no abuse in that regard.
For the reasons assigned, the judgment of the trial court is affirmed at plaintiffs costs.
AFFIRMED.

. The suit against the Tangipahoa Parish Council was heard by the judge. The suit against the driver and her liability insurer was dismissed prior to trial leaving the suit against General Motors Corporation and Trammel's uninsured motorist carrier to be tried by a jury. Following the bench trial, the court indicated that it would render judgment in favor of the Tangipahoa Parish Council and against plaintiff. Following the jury verdict, the court rendered judgment in accordance with that of the jury. The appeal as to the Tangipahoa Parish Council has been dismissed and that judgment is now final.

. Mrs. Shirley Hodge's deposition testimony was offered as she was unavailable to testify at trial.