hWOODARD, Judge.
This is a medical malpractice case. The jury rendered a verdict in favor of defendants-appellees (Dr. William Stanley Gore, Lake Charles Medical and Surgical Clinic, and Louisiana Medical Mutual Insurance Company, a/k/a LAMMICO). Plaintiff-appellant Lois Marie Regan has appealed. We affirm.
FACTS & ACTIONS OF THE COURT
Lois Marie Regan, following surgery for the removal of a lesion from one of her breasts, was referred to Dr. William Stanley Gore, a hematologist/oncologist, for chemotherapy. During the course of her chemotherapy regime, she caught a cold and asked Gore for medication. One of the medications he prescribed, Sulfatrim, contained sulfa, which Regan is allergic to. She sustained a stroke.
After a medical review panel unanimously found in Gore’s favor, Regan and her husband sued him for malpractice. They also made defendants Lake Charles Medical & Surgical Clinic, where he practices and in which he is a partner, and Louisiana Medical Mutual Insurance Company, his insurer. They alleged in their petition that the stroke was caused by the sulfa-derivative medication prescribed by |2Gore, and that Gore knew or should have known that she was allergic to sulfa drugs. Following a four-day trial, a twelve-person jury returned a unanimous verdict in favor of the defendants. After the trial court denied the Regans’ motion for a JNOV, she, alone, filed this appeal.
ASSIGNMENTS OF ERROR
The plaintiff assigns two errors: (1) the trial judge erred when he refused to admit into evidence, under the learned treatise exception to hearsay, excerpts from a medical publication relating sulfa drugs to strokes; and (2) the jury’s verdict was manifestly erroneous and contrary to law and evidence.
LAW & ARGUMENT
Both assignments of error raise the question of whether the trial court abused its discretion. From the panoply of legal precepts pertaining to the applicable standard of appellate review, as comprehensively recapitulated by the Louisiana Supreme Court in Stobart v. State Through DOTD, 617 So.2d 880 (La.1993), the following seem pertinent to this case:
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has an *271 nounced a two-part test for the reversal of a factfinder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill 505 So.2d 1120, 1127 (La.1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
^Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell 549 So.2d at 844-45. Nonetheless, this Court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’” Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
This court has recognized that “[t]he reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Canter v. Koehring Co., 283 So.2d 716 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
In the case now before this court, we conclude, after a review of the record, that the trial court was presented with two permissible views concerning both issues. We, thus, hold that the trial court’s findings were not manifestly erroneous or clearly wrong.
Was Medical Text Material Properly Excluded?
We first address whether the trial judge properly excluded from admission into evidence certain portions of a written publication. The plaintiffs attorney, while directly examining medical expert Dr. Donald Harper, attempted to have introduced into evidence, as a learned treatise, excerpts from Baker and Baker’s Clinical \ Neurology, comments on a study, known as the Zeek Study, purportedly relating sulfa-derivative drugs to strokes. The defense objected on the grounds that, by the witness’s own admission, the text was not authoritative. The judge sustained the objection. .
Louisiana Code of Evidence article 803(18) governs hearsay exceptions as they apply to this matter:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(18) Learned treatises. To the extent called to the attention of an expert witness upon cross-examination or, in a civil case, relied upon by him in direct examination, *272 statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, such a statement may be read into evidence and received as an exhibit but may not be taken into the jury room. [Emphasis supplied.]
We find that the judge did not err in refusing to admit into evidence the written material in question. Under direct examination, Dr. Harper clearly testified that he did not consider the publication authoritative. Plaintiff-appellant now contends that the doctor had in mind a medical definition of “authoritative,” not a legal definition, when he stated that the text was not authoritative. This distinction, however, was not brought out during the direct examination of Dr. Harper, although plaintiffs attorney had the opportunity to do so while the doctor was on the witness stand; nor was the distinction brought to the trial judge’s notice at the time of his ruling on the objection.
Moreover, even if this court were persuaded that Dr. Harper meant only that the comment on the Zeek Study was not medically authoritative, it would not necessarily follow that the material in question was therefore legally authoritative. That it was legally authoritative would still have to have been established at trial, and the record of the trial proceedings below does not show that it was.
Even if there was error by the trial court, that error was harmless. The record shows that the contents of the study that Regan sought to have admitted into evidence were in fact made known to the jury through expert testimony, and the plaintiff was not deprived of questioning other witnesses about the contents of the study. Any error allegedly arising out of the exclusion of evidence admissible under the “learned Istreatises” exception is not reversible error where the exclusion of the publication merely prevented the verbatim reading of the contents of the publication which the jury heard anyway. Viviano v. Arceneaux, 572 So.2d 813 (La.App. 4 Cir.1990).
Utilizing the standard of review set forth in Stobart, we conclude that the trial judge did not err in his ruling that the text in question was not authoritative. A review of the record shows that his conclusion was reasonable, based on the stated opinion of the expert, Dr. Harper, under direct examination. Moreover, if the judge did err, the error was harmless, as Dr. Harper was allowed to fully discuss the material in question while he was on the witness stand, and the plaintiff had an opportunity to question the other witnesses concerning the excerpted text. Viviano, 572 So.2d 813. Thus, we find this assignment to be without merit.
Was the Jury’s Verdict Manifestly Erroneous?
Regan assigns as error the jury’s findings that she had not informed Dr. Gore and his staff of her allergy to sulfa drugs and that the sulfatrim did not cause her stroke.
Regan testified that she told Dr. Gore and his nurse that she was allergic to sulfa drugs. Dr. Gore and the nurse testified that they had no particular memory of whether she did or not. Regan’s medical file only notes that she is allergic to codeine. No mention is made of an allergy to sulfa. Thus, claims the’ plaintiff, the jury should have found that Dr. Gore and his staff were negligent.
However, Dr. Gore and his nurse further testified that it was théir inveterate policy and practice to ask a patient if she was allergic to any medication and to note the patient’s response in her file, and as the Regan file only noted that she was allergic to codeine, and not that she was allergic to sulfa, the jury could also have reasonably inferred that Regan had informed Dr. Gore and his staff of an allergy to codeine only. Moreover, no testimony or evidence showing that Dr. Gore and his staff violated any known standard of practice as to patient “intake” procedures was presented. That some clinics may operate under different procedures does not prove that Dr. Gore’s procedures were legally deficient.
Notwithstanding, even if we would find that Dr. Gore, or a member of his staff, *273 had failed to properly note Regan’s chart after having been told by her that she was allergic to sulfa drugs, this in itself does not prove that the sulfa drug component of lsher medication caused the stroke. Dr. Harper testified for the plaintiff that he believed that it did, and his opinion at least partially rested on the comment to the Zeek Study, discussed above, which Dr. Harper believed supported at least some degree of correlation between sulfa drugs and strokes.
On the other hand, the testimony and evidence on behalf of Dr. Gore tended to prove otherwise, and could have been appreciated by the jury as the more compelling. Dr. Stanley S. Morgan, abundantly qualified in pharmacology, with a Ph.D. and much teaching experience in that field, negated the probability that the Sulfatrim could have caused Regan’s stroke. He said that a stroke is a disease process which blocks arteries and constricts vessels and thus deprives the brain of blood containing oxygen, while the effects of a drug reaction are to dilate vessels, not constrict or obstruct them. As to the cause of the stroke, Dr. Morgan had no definite opinion, but noted that Regan was a smoker, was under a great deal of stress as a cancer victim, and that smoking, cancer, and chemotherapy for that cancer can predispose someone to a stroke. We also point out that the members of the medical review panel that testified at trial expressed doubt and reservations as to the likelihood that the Sulfatrim caused Regan’s stroke. Even Dr. Harper admitted that it is rare for a stroke to be caused by an allergic reaction to Sulfatrim. In addition, the jury could have construed Dr. Harper’s testimony, when comprehended in its entirety, as having established only a tenuous link between a sulfa drug reaction and a single vessel stroke. For instance, he concedes on cross-examination that he does not know how many single vessel strokes were reported in the Zeke study, nor can he tell from the comment on that study, which he relies on for his ultimate opinion.
We cannot say that a reasonable factual basis does not exist for the finding of the jury, particularly when keeping in mind that the jury’s task centered around an evaluation of live witnesses and two rationally permissible views of what might have happened. Sto-bart, 617 So.2d 880. Thus, the jury’s choice cannot be manifestly erroneous or clearly wrong. Id.
We therefore find this assignment of error meritless.
_JtI)E CRE E
For the foregoing reasons, we affirm the decision of the trial court in favor of the defendants-appellees. All costs of this appeal are assessed against the plaintiff-appellant, Lois Marie Regan.
AFFIRMED.