JaSHORTESS, Judge.
On April 11, 1987, at approximately 10:00 p.m., Johnette Roux failed to negotiate a 45-degree curve on Louisiana Highway 77 in Iberville Parish, Louisiana. The Camaro Z-28 she was driving traveled along the shoulder for 60 feet, struck a large oak tree located five and one-half feet from the edge of the roadway, then ricocheted 28 feet into the center of the roadway. Her passenger, Cindy Roux, was ejected from the vehicle. Johnette had to be extricated from the vehicle. Both women were pronounced dead shortly after their arrival at Our Lady of the Lake Medical Center in Baton Rouge.
Johnette’s parents, John B. Roux, III, and D’Ette Evans (plaintiffs), filed suit against the State of Louisiana, through the Department of Transportation and Development (defendant). After trial on the merits, the trial court found the accident was solely Joh-nette’s fault and dismissed plaintiffs’ suit. Plaintiffs appeal.
Cindy Roux, 25 and divorced, lived with her mother and two children on Highway 77 in Iberville Parish. Their home was just past the curve where this accident occurred. Johnette Roux, 22 and single, had moved into her mother’s home in Gross Tete a few weeks before the accident. Before then, Johnette lived in Baton Rouge and visited her mother frequently. Johnette and Cindy had become friends six to eight months before the accident, and the amount of time they spent together increased when Johnette moved to Gross Tete.[2] Cindy’s sister, Theresa Waters, testified Johnette visited their home frequently.
Johnette’s brother, who lived in Houston, had purchased the Camaro a few weeks before the accident. He had left the vehicle at his mother’s house until he secured insurance on it. Johnette had never driven it before the night of the accident. .
There is little evidence of Johnette and Cindy’s activities on the evening of the accident. Evans last saw her daughter about 5:00 p.m. that evening, whenJ&Evans left on a trip to Houston. Between 8:00 and 9:00 p.m. Cindy and Johnette were seen at the truck stop where Cindy’s mother worked, at Cindy’s home, and in the parking lot of the Holiday Inn in Port Allen. The four people who saw them between 5:00 and 9:00 p.m. testified they did not appear intoxicated. However, empty beer cans were found in the ear after the accident, and the postmortem blood-alcohol levels for Johnette and Cindy were .17 and .05, respectively.
*768 There were no witnesses to the accident. The Louisiana state trooper who investigated the accident, Larry K. Horton, testified there were no skid marks and no evidence Johnette attempted to steer the vehicle back onto the road. He stated he saw tire tracks in the soft shoulder where the vehicle left the road, which led in a direct path to the tree. The vehicle had crossed a ditch and struck the tree, which was five feet, six inches from the pavement, on the back slope of the ditch.[3] Dr. Olin K. Dart, Jr., defendant’s expert in traffic engineering, highway construction and design, and accident reconstruction, testified the car was traveling at least 50 miles per hour when it hit the tree.
Highway 77 is a rural collector road. It is very curved, is lined with trees, and has very little shoulder. The pavement is 18 feet wide. Drainage ditches parallel the road on both sides. The speed limit is 40 miles per hour. All testimony in this case dealt with the portion of Highway 77 between the Town of Rosedale and the curve where this accident occurred.
Plaintiffs contend the trial court erred in finding defendant was free from fault. They assert Highway 77 was hazardous and defective and those defects caused the severity of the harm to their daughter. Specifically, they contend Highway 77 was hazardous because the center and edge striping were in poor condition, the curve warning sign was obstructed by vegetation, the warning signs were confusing and inadequate, the ditch was non-traversable, and the tree was located too close to the roadway.
1 Striping
Plaintiffs’ expert in highway safety and design, T. Darcy Sullivan, testified based on photographs taken by Horton the night of the accident that one of the double yellow center lines was missing, and that one has “less than desirable reflective properties at night.” He further opined the white edge striping at the scene is “significantly deteriorated.” He was certain the road had not been striped in at least a year, and the striping had lost much of its reflective properties. Sullivan testified edge striping is “highly desirable,” but he did not know whether it is required by highway standards. He opined that the center and edge lines “would have been very ineffective at night” and that the “apparent lack of reflectivity of the pavement markings” could have contributed to the vehicle straying off the paved surface.
Dart testified the edge striping was in fair condition and the center striping was poor. He opined, however, that the condition of the striping did not cause the accident. If the ear’s headlights were on dim, Johnette should have been able to see the striping from a minimum of 150 feet, even if the striping retained little reflectivity. With the lights on high beam, she could have seen 200 feet of striping as she entered the curve. Furthermore, edge striping is not required on this class of roads and is normally not found on roads less than 22 feet wide.
The trial court described the edge striping as “lagniappe.” The court stated the striping was “plainly visible, although not the optimal conditions” and found Johnette “would have had no difficulty seeing the white line from the point she left the road.”

Alleged Obscurement of Curve Sign

Nancy Latiólas, Cindy’s mother, went to the scene the day after the accident to search for Cindy’s personal effects. She also looked for a cause of the accident. She noted the curve warning sign was obscured by tree limbs so that only the bottom portion of the sign was visible.
James H. Lee, a traffic operations specialist for defendant, investigated the accident on April 14, 1987, three days after the accident, and photographed the |5curve sign. His photograph shows a clearly visible sign. He testified he researched whether defendant had done maintenance between April 11 and April 14 and found it had not. He stated he saw no leaves or limbs obscuring the sign.
Frank A. Fox, an investigator retained by plaintiffs, went to the scene on May 26,1987, about six weeks after the accident, and pho *769 tographed the curve sign. His photograph shows the sign covered by tree limbs.
Latiólas testified the curve is visible from the end of her driveway. She knew of no maintenance done in this area between the accident and April 14. She noted, however, the curve sign cannot be seen from her driveway and thus maintenance could have been done without her knowledge.
The trial court noted the photographs were taken from two different angles; Lee’s was taken closer to the sign, and Fox’s was taken from the edge of the pavement “a good distance down the road.” The court found that even if the sign was obscured from a distance, it was not obscured in any way as one got closer to the sign.

Clarity and Sufficiency of Road Signs

The village limits of Rosedale are approximately 3,600 feet from the tree Johnette’s vehicle struck. In 1985 defendant erected a sign at that point which read “Drive Carefully Substandard Roadway.” These signs, which are unique to Louisiana, were placed on state roads which did not meet current highway standards, those with a pavement width of less than 18 feet or a shoulder width of less than five feet. Lee testified they were placed on 10% of the roads in his nine-parish district.
Dart testified the substandard roadway sign fails to give the average motorist any idea what is wrong with the roadway but directs the motorist to drive cautiously. Sullivan stated the sign is meaningless to most drivers because the range of possibilities is so wide. In his opinion, the sign was intended to convey the message: “Mr. Motorist you better be looking for everything.... ”
A 25-miles-per-hour speed limit sign was posted below the substandard roadway sign. Sullivan testified these two unrelated signs should not have been |6posted together because when the speed limit increases to 40 milés per hour 700 feet later, a motorist could be led to believe the roadway was no longer substandard. Lee testified the sign had been placed there by the Village of Rose-dale without defendant’s knowledge or consent. Defendant made the village remove it immediately after Lee discovered it.
There were at least two signs advising of the 40-miles-per-hour speed limit between Rosedale and the curve. The signs were 2,900 and 1,600 feet from the tree, according to Sullivan, and the curve warning sign was 623 feet from the tree. Sullivan stated the signs met the minimum requirements, and in his opinion they did not cause the accident. Dart agreed the signs were adequate and did not cause the accident.

Non-traversability of Ditch

Before striking the tree, Johnette drove through the drainage ditch which parallels the road. Sullivan testified the ditch is “non-traversable” because there is no safe way for a motorist to traverse the ditch and maintain control of his vehicle. The ditch, which the trial court described as “ancient,” is “V”shaped. Modern ditches have flat bottoms so a motorist can maintain control and drive out of them. Sullivan stated the ditch was unacceptable by today’s standards, but he stated he had no way of knowing if it met standards when constructed. He opined the ditch was a hazard which, when combined with the tree on its back slope, became a lethal hazard.
Lee testified Highway 77 and its ditches were taken into the state highway system in the 1930’s. Dart stated this ditch, whose only function is to drain water into a bayou, was properly designed by 1930’s standards.

Proximity of Tree to Roadway

The tree involved in this accident was a large oak tree, approximately 40 inches in circumference. It was located on the back slope of the ditch, five feet, six inches from the pavement. Trooper Horton testified the tree was not in the ditch. Sullivan testified it was on the bottom back slope of the ditch, while Lee testified the center of the tree was up to the top of the crown on the back slope. Lee stated the ^photograph of the tree in the record was taken at a bad angle and fails to show that the main part of the tree is on the crown. Lee noted the tree did not block drainage through the ditch.
Sullivan opined the tree was a hazard which caused Johnette’s death. He believed there was a “distinct possibility” Johnette *770 might have walked away from the accident had the car not hit this tree.
Horton testified had the tree not stopped the car, it would probably have traveled another 60 feet. Lee stated Highway 77 is lined with trees. He counted 125 trees more than 18 inches in diameter along the west side of Highway 77 from Rosedale to the scene. Dart testified that even if the tree Johnette hit had been removed, she would have hit a smaller tree 24 feet behind it, or another tree more to the center or left. He opined that while the “same accident” would not have happened had defendant removed this tree prior to the accident, the damage would have been similar, i.e., there still would have been a serious accident, possibly with fatalities. The car could have flipped in the ditch, or the car could have struck one of the many other trees.

Trial Court’s Factual Findings

The trial judge found the tree was a “contributing cause” of the accident. However, he stated he did not believe the tree or the other alleged defects were “of such a nature as to create an unreasonable risk of harm under the duty risk analysis....” Instead, he found the proximate cause of the accident and the death of Johnette was her speed, her inattentiveness, her intoxication, and probably her being unaccustomed to her brother’s car. Plaintiffs contend these findings are manifestly erroneous.

Analysis

The standard of appellate review of factual findings is a two-part test: 1) the appellate court must find from the record there is a reasonable factual basis for the finding of the trial court, and 2) the appellate court must further determine the record establishes the finding is not clearly wrong (manifestly erroneous). Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Factual findings should not be reversed on appeal ^absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the trial court’s or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Housley v. Cerise, 579 So.2d 973, 976 (La.1991); Sistler, 558 So.2d at 1112.
In this case, the trial court made specific factual findings that the striping was adequate, that the curve sign was not obscured, and that the ditch was “adequate, sufficient, and met [its] purpose for when it was taken” into the state system. After reviewing the record, we have determined those factual findings are permissible views of the evidence which are not manifestly erroneous. The court’s finding the striping was plainly visible and should have been seen by Johnette is based on his review of the photographs in evidence and on Dart’s testimony. Its finding the curve sign was not obscured is supported by Lee’s testimony and the photograph he took three days after the accident, and its finding regarding the adequacy of the ditch is based on Dart’s testimony.
The court further found the tree, while a contributing cause, was not a proximate cause of the accident. Plaintiffs conceded the tree did not cause the accident but contended it caused Johnette’s death. However, even Sullivan admitted there were a number of trees in this curve further off the roadway, and any collision with a tree six inches or greater in diameter could cause serious injuries.
The record contains a plethora of evidence supporting the trial court’s finding that the accident and Johnette’s death were caused by her speed, her inattentiveness, and her intoxication. Dart testified that, in his opinion, excessive speed and Johnette’s alcohol consumption caused the accident. Her inattentiveness is shown by her failure to make any attempt to negotiate the curve, even though, as the trial court found, she was familiar with the road because of her many visits to Cindy’s house. Her intoxication was proven by the testimony of Paul Cobb, Jr., the state police toxicologist who analyzed Johnette’s blood sample and bfound it con *771 tained .17 grams percent blood-alcohol.[4] Dr. James A. Freeman, Iberville Parish Coroner, testified this was equal to having five and one-half 12-ounce beers circulating in her blood system. Her speed was shown by Dart’s testimony that the Camaro was traveling at least 50 miles per hour when it left the roadway, and by Horton’s testimony that there was so much damage to the vehicle he could not identify the make or model of the vehicle when he arrived at the scene.

Conclusion

The findings of the trial court are amply supported by the record. We find no manifest error in those findings.[5] Thus, we affirm the judgment of the trial court dismissing plaintiffs’ demands. Plaintiffs are east for all costs of this appeal.
AFFIRMED.

. Although they had the same last name, Cindy and Johnette were not related. Cmdy's mother speculated Johnette might have been distantly related to Cmdy's ex-husband.

. This ditch was "V”-shaped. The area sloping from the bottom of the "V” away from the road is the back slope, and the top of the back slope is the crown.

. At trial plaintiffs attempted to show the blood sample was tainted, but the trial court found it was not. That issue was not raised in this appeal.

. In light of our decision on the issue of liability, we pretermit discussion of whether a plaintiff’s damages in a wrongful death action can be reduced by the percentage of fault of the decedent