|..CARTER, C.J.
This is an appeal by defendant, Shoney’s Inc. (Shoney’s), from a judgment in favor of plaintiff, Della Weise Smith, in the amount of $22,570.21, for personal injuries she sustained as a result of an incident at a Shoney’s restaurant in Baton Rouge.
FACTS
On the evening of June 12, 1993, Smith was in the buffet line at the Shoney’s Restaurant located on College Drive in Baton Rouge. While Smith was waiting to select her food, a server dropped a tray of beverages causing cold liquid to hit Smith in the back from her waist down. According to Smith, there was an almost simultaneous crash and she felt glass hit her leg. This incident startled Smith to the point that she threw her head back, and arched her back as she went up on her toes to avoid slipping in the liquid. Smith grabbed the sneeze glass over the buffet line to stabilize herself. Two men standing on either side of Smith each grabbed her to prevent her from slipping.
*225 Smith filed a suit against Shoney’s to recover damages for personal injuries she sustained in this incident.[1] Smith claimed she injured her neck, back and foot. Sho-ney’s answered the petition, admitting one of its servers dropped a tray of beverages. However, Shoney’s asserted the only damage Smith sustained was having cold liquid splashed on her shoes and pantyhose. The matter proceeded to trial, and the trial court found in favor of Smith and awarded her $12,570.21 in medical expenses and $10,000.00 in pain and suffering.
Shoney’s appeals alleging the trial court committed manifest error in finding that the risk of a patron sustaining injuries when startled by a dropped tray of glasses was not encompassed in the server’s duty not to drop the tray of glasses; in finding that Smith’s injuries were caused by the incident; and, in awarding $22,570.21 in damages.
DISCUSSION
The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact-finder’s conclusion was a reasonable one. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be clearly wrong. Stobart, 617 So.2d at 882-83.
Risk of Injuries Included in Scope of Duty
Shoney’s claims the trial court erred in finding its breach of duty encompassed the risk that Smith would incur back and neck injuries in the manner in which she claims. According to Shoney’s, the duty to exercise reasonable care in carrying trays cannot encompass the risk of a person sustaining injuries because they were startled. To impose such a duty would encourage potential claimants with preexisting back or neck problems to loiter in a restaurant until a waitress drops a tray and then claim aggravation of their condition when they were startled by the sound. Shoney’s argues such a result does not satisfy the “ease of association” test as set forth in Hill v. Lundin & Associates, Inc., 260 La. 542, 549, 256 So.2d 620, 622 (La.1972), wherein the supreme court found that a contractor who had left a ladder standing upright against a house was under no duty to protect a maid from the risk of tripping over the ladder after a third party had placed the ladder on the ground. As the supreme court stated in Hill:
All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape.
256 So.2d at 623.
We disagree with Shoney’s argument for two reasons. The first reason is that in Hill, there was an intervening third party, which the contractor had no control over, who caused the ladder to be moved. In the present case, there is no third party that caused |4Smith to be startled. Rath *226 er, Smith was startled as a direct result of the actions of the Shoney’s server.
Secondly, Shoney’s overlooks the crucial fact that Smith was not merely startled by the sound of the crashing glasses, but she was also hit with the beverages on the tray. Smith was also attempting to get out of the area before she slipped in the liquid. The risk encountered by Smith stemmed from the fact that the server was behind Smith when she dropped the tray, so Smith could not see if she was going to be splashed or struck by everything on the tray. As a result, the risk Smith encountered was of injuring herself as she attempted to get out of the way of the falling beverages.
Given the circumstances surrounding the manner in which the accident occurred, we find there is an anticipated risk encountered by dropping a tray of beverages in close proximity to an unsuspecting patron because the patron will certainly attempt to get out of the way. As the trial court indicated in its oral reasons for judgment, had one of the glasses broken and gashed Smith in her leg or if she had stepped backward into the liquid and slipped and fallen, there would be no question of liability. Simply because Smith’s preexisting back condition made it more likely for her to sustain an injury in these unique circumstances, Shoney’s should not be relieved of liability. There is an ease of association with the duty not to drop trays in close proximity to a patron, and the risk of that patron being injured when trying to avoid being hit by the falling substances. Accordingly, we find that the trial court was not clearly wrong in these conclusions.
Causal Relationship to Incident
Shoney’s argues the trial court committed manifest error in finding Smith proved the Shoney’s incident caused injuries to her neck and back. Shoney’s argues that the record indicates Smith’s complaints of back and neck pain are unrelated to the incident at Shoney’s. Causation is a factual finding and must be reviewed under the manifest error standard of review. Housley v. Cerise, 579 So.2d 973, 979 (La.1991).
Smith had a preexisting lower back condition stemming from a 1989 accident where she stepped in a hole at Acadiana Mall in Lafayette. In 1991, she underwent a microlumbar laminectomy of L4-5 performed by Dr. William Foster. Following her back surgery, she obtained medical retirement from her employer based on Dr. Foster’s 1 .^opinion that she could never return to her job. At that point in time, Dr. Foster considered Smith “severely disabled.”
Smith continued to have back problems following her surgery and prior to the June 12, 1993 incident at Shoney’s. Six months after her surgery, in an office visit on January 14, 1992, Smith reported to Dr. Foster that she was experiencing intense low back pain and had cervical pain radiating into her right shoulder. Smith saw Dr. Foster again on April 6, 1993, two months prior to the Shoney’s incident, and he noted her primary problem consisted of low back pain and pain in both legs, especially her left leg. Smith also reported a burning sensation in her mid-thoracic and lower cervical area that he felt was secondary to her low back pain.
Prior to her incident at Shoney’s, Dr. Foster had assessed Smith as having failed back syndrome secondary to nerve root fibrosis and probable instability. Dr. Foster acknowledged Smith had preexisting disc bulges at L4-5, C3-4, C4-5, with bony spurring at C4-5. Dr. Foster had recommended Smith undergo a lumbar fusion prior to her Shoney’s incident; however Smith had declined.
At the time of the Shoney’s incident, Smith stated she felt a pressure burning in her neck and lower back where she previously had surgery. Smith returned to her booth and examined the area of her leg where she felt a stinging sensation. She noticed a small amount of blood come through her white stocking and became *227 concerned because of the increased chance of infection she has as a diabetic.
On her way back to Lake Charles, approximately an hour and a half after the incident, Smith stated she felt a burning sensation and pain generating down her left leg. When she got home, both legs were swollen and she felt a burning pain in her neck and back. Her soreness and stiffness in her cervical area continued into the next day.
On Monday June 14, 1993, Smith had a previously scheduled appointment with Dr. Paraguya, who monitored and treated her for diabetes. Dr. Paraguya examined her leg and found no glass in it. Although Smith testified she complained of the back and neck pain she felt since the incident, Dr. Paraguya’s office notes reflect no such notation. Smith again saw Dr. Paraguya on June 30, 1993, with complaints of periodic | ^numbness in her hands, but no associated pain. This was found to be an abnormal triglyceride level. Although Dr. Paraguya’s notes did not reflect any complaints of neck or back pain, he testified in his deposition that his area of treatment focused on Smith’s diabetes and he left her back condition to other doctors she was seeing.
On Monday, August 3, 1993, Smith saw Dr. William Foster, a neurosurgeon, who had performed lumbar surgery on Smith in 1991. At this exam, Dr. Foster noted objective signs of injury in the form of spasm in the cervical area. Dr. Foster diagnosed Smith with cervical strain with nerve root irritation. He prescribed physical therapy, which proved to be unsuccessful. Dr. Foster continued to treat Smith and saw her again on September 23, 1993, when Smith’s most prominent complaints were of neck and upper extremity pain. He also noted her diabetic history and that her blood sugar readings were wildly fluctuating.
After undergoing a myleogram and CT scan in October 1993, Dr. Foster diagnosed Smith with a severe lumbar strain with nerve root irritation, preexisting failed back surgery, cervical radioeulapa-thy, and diabetic neuropathy. Dr. Foster related the onset of Smith’s cervical problems to the Shoney’s incident, because he felt that Smith’s two prior complaints of cervical pain were isolated problems that arose secondary to her low back condition and were not primary neck problems.
Between August 3, 1983, and July 1, 1997, Smith saw Dr. Foster nine times. Even on his last exam, Dr. Foster noted objective signs of injury when Smith exhibited reflex abnormalities. Dr. Foster found her symptoms were consistent with her complaints. At that point, Dr. Foster referred Smith to pain management treatment with Dr. Kevin Gorin.
Dr. Gorin testified by deposition and was accepted as an expert in rehabilitation and pain medicine. He examined Smith on July 30, 1997. He testified he did not think Smith was malingering. His examination revealed Smith had well-defined trigger points and a well-defined pattern of pain. Dr. Gorin noted these trigger points were an objective finding. Dr. Gorin’s actual diagnosis was that Smith has post-traumatic left lumbrosacral myofacial pain syndrome, post-traumatic right superior trapezius myofacial pain syndrome, compensatory left saerioilliac joint dysfunction associated with left|7sciatic nerve radiocul-pathy and an adjustment disorder with evidence of depression. Dr. Gorin also related Smith’s problems to the Shoney’s incident.
In response to the testimony of Drs. Foster and Gorin, Shoney’s offered the testimony of Dr. John Clifford, a neurosurgeon appointed by the trial court to examine Smith. Dr. Clifford testified it would be most unusual to sustain a significant cervical injury based on the described mechanism of injury. Dr. Clifford examined Smith in April of 1997, and noted no objective clinical findings that would suggest she had a herniated or ruptured cervical disc. Dr. Clifford noted that during Smith’s exam, the lightest touch brought *228 about complaints of pain by Smith. Dr. Clifford stated there was no evidence of muscle spasm, no atrophy of the muscles, nor any tenderness to palpitation of her joints. Dr. Clifford testified Smith reacted in a very nonphysiologic manner to the exam. Dr. Clifford did not believe the incident at Shoney’s caused a disc injury to Smith; however, he did testify that the jump may have caused some pain.
Shoney’s also presented the deposition testimony of Dr. Jack Hurst, who was accepted as an expert in neurological surgery. Dr. Hurst had examined Smith at Shoney’s request and opined that Smith’s clinical neurological presentation was a hoax. According to Dr. Hurst, Smith had no difficulty standing or walking, her description of electrical pain generating up her neck was inconsistent with every description of pain he had ever encountered, there was no muscle atrophy present, and she did not put forth any effort in the strength test he administered, which was incompatible with her ability to stand and walk. Dr. Hurst testified that Smith had no foral, motor, or lateralizing neurologic sign that corroborated her complaints of pain.
Shoney’s argues the only person at trial who made a casual link between Smith’s claimed injuries and the Shoney’s incident was Smith herself; however, the record indicates otherwise. Dr. Foster clearly stated that Smith’s back was in a “pitiful condition” prior to the Shoney’s incident and that any sort of injury could surely aggravate her condition. According to Dr. Foster, Smith had a soft tissue type injury in her neck and back due to the Shoney’s incident and because of her preexisting back condition, her obesity, and her diabetes, her soft tissue injury lasted far longer than it |sshould have. Applying the manifest error, clearly wrong standard of review, we cannot say that the trial court was manifestly erroneous in this finding. Damages
After our review of the record, we find there is an adequate basis for the trial court’s award of $12,570.21 in medical expenses. The court-appointed physician who examined Smith, Dr. Clifford, indicated that the tests ordered by Dr. Foster were appropriate based on the complaints of Smith. Considering the onset of different complaints and findings of Dr. Foster, we find Smith proved a causal relationship between the Shoney’s incident and an aggravation of her back conditions.
The trier of fact is afforded much discretion in fixing general damage awards. LSA-C.C. art. 2324.1; Hollenbeck v. Oceaneering International, Inc., 96-0377, p. 12 (La.App. 1st Cir.11/8/96), 685 So.2d 163, 172, writ denied, 97-0493 (La.4/4/97), 692 So.2d 421. The discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert, denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn, 623 So.2d at 1260.
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Youn, 623 So.2d at 1260. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. Youn, 623 So.2d at 1261.
We further find the trial court did not abuse its discretion in its award of $10,000.00 for Smith’s pain and suffering. The record clearly supports the trial *229 court’s finding that the Shoney’s incident aggravated Smith’s preexisting back condition. It |flmust be considered that Smith had significant preexisting back problems and the Shoney’s incident exacerbated those problems. According to her treating physician, Dr. Foster, Smith’s soft tissue injury took a longer time to heal because of her preexisting back problem, her obesity, and her diabetes. We further note that Shoney’s must take its plaintiff as it finds them. See Jenkins v. Lindsey, 97-0492, p. 6 (La.App. 4th Cir.4/16/97), 693 So.2d 238, 241-42. Accordingly, Shoney’s should not be relieved of liability simply because Smith’s preexisting conditions made it possible for her to sustain an injury in this accident.
CONCLUSION
Based on our review of the record, we affirm the judgment of the trial court in favor of Della Weise Smith in the amount of $22,570.21 against Shoney’s, Inc. All costs of the appeal are assessed against Shoney’s, Inc.
AFFIRMED.

. Smith's petition also named Shoney’s, Store No. 1516 as a defendant, but Smith later dismissed that defendant because it was conceded Store No. 1516 was a non-entity.