|, DOUCET, Chief Judge.
The Plaintiff, George Corona, appeals the trial court’s dismissal of his claim against his own uninsured/underinsured motorist insurance carrier.
On April 21, 1996, Corona was driving a vehicle that was hit from behind by a vehicle driven by Debra Gragg. Corona’s claim against Gragg was settled. He filed this action to recover uninsured/underin-sured motorist benefits under his own policy of automobile insurance with Allstate Insurance Company (Allstate). After hearing the evidence, the trial court found that Corona had not shown satisfactory proof of loss; that is he did not show that the other driver was uninsured or underin-sured, that the other driver was at fault, that the other driver’s fault caused damages, and the extent of those damages. The court rendered judgment dismissing Corona’s demand against Alstate. Corona appeals.
Corona first asserts that the trial court erred in finding that the underlying coverage was sufficient to compensate him for his damages.
Corona, two of his treating physicians and his physical therapist testified at trial. Dr. Gerald Mouton, a family practitioner testified that he first saw Corona on May 6, 1996. His notes reflected the following: At that time, Corona explained that he had been hit from behind in an automobile accident causing his head to hit the rear window of his pick-up truck. On his first visit to Dr. Mouton, Corona was complaining of a headache which had almost resolved by the time of his visit, mild intermittent neck pain with no radiation and moderate non-radiating lower back pain. He told Dr. Mouton that he had no prior history of back injury. Corona also told Dr. Mouton that he had had no medical treatment since going to the emergency room immediately after the accident. Mouton stated that Corona sat in a chair with no ^appearance of pain and was able to lay on the exam table with only mild pain. He found Corona to have a full range of motion in his neck, trapezius muscle tenderness and no evidence of traumatic head injury, such as cuts or bruises. Dr. Mouton further found non-specific par-alumbar tenderness from the third vertebrae down to the S-l level. The straight leg raising test was negative, and Corona was able to touch his toes. Dr. Mouton found no muscle spasm. Dr. Mouton prescribed an anti-inflammatory, a narcotic pain reliever and a muscle relaxant. He further ordered a course of physical therapy for the cervical and lumbar spine. He released Corona to light duty work, allowing him to lift no more than twenty-five pounds and to carry no more than ten pounds.
Corona visited Dr. Mouton again on May 28, 1996. At .that time, Corona complained of pain in both thumbs, and aches in the lower back but indicated that his neck problems were nearly resolved. Corona told Dr. Mouton that the lower back pain was constant and that the pain varied in intensity. The pain was brought on by increased activity, particularly bending over. The X-Ray report showed some minimal osteoarthrosis of the cervical spine. Dr. Mouton defined arthrosis as early signs of degenerative arthritis. He stated that it is not related to trauma. However, he stated that it could cause delayed recovery from trauma in that there would be more areas of potential inflammation and nerve irritation in the back. On this visit Dr. Mouton felt that the lumbar strain was improving but that Corona was still in need of treatment and physical therapy.
Dr. Mouton saw Corona again on July 23, 1996. At that time, Corona stated that his back had improved to the point that the pain was only intermittent when he fell from a ladder to a concrete floor. He told Dr. Mouton that he had been to see a | aDr. *338 Robbins at Quality Care where X-Rays were taken. He said that Dr. Robbins diagnosed lumbar strain. Dr. Mouton felt that the fall had caused an aggravation and may have slowed Corona’s recovery. At this visit Dr. Mouton referred Corona to an orthopedic doctor. He did not see Corona again.
Timothy Naquin, a physical therapist, testified that he had treated Corona from May 8, 1996 to August 31, 1996. He testified that Corona’s neck pain was helped significantly at first. The lumbar pain continued more or less persistently and gradually got better. Naquin felt that Corona’s back was 70% better as of his last treatment. He testified that the treatment had been successful, although not 100% successful.
Dr. Robert Bernauer, an orthopedic surgeon, saw Corona on two occasions about eighteen months after the accident. Corona first sought treatment from Dr. Bernauer on February 27, 1998. He complained of back pain and numbness radiating down both legs, especially the right leg. Dr. Bernauer recommended a CAT scan which showed a normal result. Corona returned on March 11, 1998. At that time, he was still in pain, Dr. Bernauer put him on an exercise program. Dr. Bernauer stated that Corona told him he had been having back pain continuously for two years. Bernauer admitted that Corona never mentioned the fall off the ladder. He stated that his exam was entirely subjective.
George Corona testified that he worked as an aircraft mechanic and did not do any heavy lifting. He admitted that he has been steadily employed since the accident. He stated that his original neck pain went away but that the back pain would always come back and that he still had it at the time of trial. He distinguished between the pain he felt as a result of the automobile accident and that he felt as a result of the fall | ¿from the ladder. He testified that the automobile accident pain was deeper, sharp and more centered. It would become worse from standing for long periods. He testified that the pain resulting from the fall off the ladder was more on the surface and lasted only three to four days. He stated that his back pain was only about 30% better after his course of physical therapy. He stated that he was able to tolerate the pain after August 1996. With regard to the numbness that led him to consult Dr. Bernauer, he explained that it first occurred about a year before trial. At the same time he experienced a “sponginess” in his foot where he would step. He admitted that the episode lasted only about two hours and never came back.
The trial court’s reasons for judgment show that his finding was based on credibility evaluations:
I am not exactly enamored with the plaintiffs testimony, I’ll be very honest. To me he was very selective in what he would tell the doctors. Maybe that is his nature. I don’t know, but it’s a very important factor with me and then we have a two-hour episode of whatever you want to call it, sponginess, numbness, whatever. He says that led him to go see Dr. Bernauer. Dr. Bernauer testified that appointment was made by his attorney. I was not impressed by Dr. Bernauer, while we’re on that subject. This doctor found nothing objective; flat said that whatever his opinion was is based on his reliance on what the man told him. Well, I don’t need Dr. Ber-nauer if that is all he’s got to offer me. I can understand and appreciate what this man says and as good as he can.- I don’t need a medical degree for that. I absolutely have a problem with his saying an orthopedic examination is 100% subjective. I have never heard that before. Of course, I have only been in this business since 1960. I have never heard that. And then Bernauer wasn’t told anything about a ladder; thinks it’s entirely apparently inconsequential. Here you have a guy falling on concrete on his back admittedly from a height of five to *339 six feet who is claiming mild back injury-before, and we have an orthopedic who says this has nothing to do about anything. Well, folks, I’m sorry, but that type of medical testimony does not assist this Court, especially since we have a 19-month interim between Bernauer’s involvement and Dr. Mouton. So, I do have a tremendous problem.
|sDr. Mouton I think was very straightforward. His testimony reduced the essentials. This man was referred to him by Mrs. Van Dyke who is a practicing attorney. He saw this gentleman four times between May 6 and July 28 of ’96. He gave him a light duty slip immediately. His findings that date; headaches almost gone, mild neck symp-tomology, no radiation, low back symp-tomology, no radiation. May 28, neck had improved, back had improved but not as much. June 19, neck is 100% okay; back needs therapy. July 23 doing good in the back, mild intermittent pain until the ladder episode. That is Dr. Mouton.
The therapist, May 28, ’96; 50% to 60% less pain. That is the back, because he had already said the neck had gone away. August 30, 70% better, reached a plateau, intermittent pain. I don’t know if he was told or not about a ladder. I know there is argument based on inference. I don’t know. I know he saw this guy many, many times. He admittedly didn’t lay his hands on him each and every time, but that is what he indicates, and that is what I’ve got, and I’m being asked to penalize an insurance company who faced with this concludes that injury, if any, and specials, if any, fell within the underlying coverage in the amount of $10,000.
As stated or said by the Third Circuit in — that’s not the case I wanted. McClendon vs. Economy Fire and Casualty, I just wanted to review the law in this area to be sure about my memory. Plaintiff has the burden to establish, “Satisfactory proof of loss.” This is defined as — we’re talking about a UM claim. This is defined as sufficient facts fully apprising the insurer that the other driver was uninsured or underinsured, that the other driver was at fault, that the other driver’s fault caused damages, and last but far from least, the extent of those damages. I’m sorry, folks, but I don’t have a preponderance satisfying those requirements. What I have is a very minor neck injury, and what I would consider to be a mild back injury, which before the ladder was doing good, mild intermittent pain, and then we have a very traumatic intervening episode. We have 19 months thereafter with no medical involvement, and we have an orthopedic’s testimony that doesn’t help the Court.
So, my inevitable conclusion is that plaintiff has not satisfied his preponderance in this case and I so hold.
Corona argues that the testimony adduced at trial supports the conclusion that his injuries exceeded the underlying coverage, which was $10,000.00. He further argues that the Defendant failed to controvert Plaintiffs evidence that the injury | filaste d forty-five months and that, as a result, the trial judge should have found that his damages exceeded the underlying coverage.
[Tjhe issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993).
*340 The Plaintiff argues that no conflict exists in the evidence. We disagree. The inconsistencies inherent in the testimony presented by the Plaintiff are tantamount to conflicts in testimony and allow for different interpretations of that evidence. As the court further stated in Stobart:
This court has recognized that “[tjhe reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Canter v. Koehring Co., 283 So.2d 716 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
Id. at 882 (alteration in original).
After reviewing the evidence herein, we find that the trial court’s credibility evaluations, as outlined in his reasons for judgment, are reasonable and supported by the record. We find no manifest error. As a result the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Plaintiff.
AFFIRMED.
SAUNDERS, J., dissents.