NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-756

STATE IN THE INTEREST OF B.C.

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. J-2119-2014, DIVISION B
HONORABLE C. ANTHONY EAVES, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Phyllis M. Keaty, Judges.

AFFIRMED.

Paula E. Miles
Louisiana Department of Children and Family Services
Bureau of General Counsel
900 Murray Street, 2nd Floor
Alexandria, LA 71301
Telephone: (318) 487-5218
COUNSEL FOR:
    Appellee - State of Louisiana, Department of Children and Famly Services

Wesley Ryan Bailey
303 East Texas Street
Leesville, LA 71446
Telephone: (337) 404-7716
COUNSEL FOR:
    Appellee - B.C. (child)

**C.B. (father)**
**Allen Parish Correctional**
**P. O. Box 278**
**Oberlin, LA 70655**
**COUNSEL FOR:**
**Appellant - C.B. (father)**

**S.C. (mother)**
**In Proper Person**
**1231 Jean Chapel Road, #49**
**Leesville, LA 71446**
**COUNSEL FOR:**
**Appellee - S.C. (mother)**

**THIBODEAUX, Chief Judge.**

C.B., the father of the juvenile, B.C.,[1] appeals the trial court's judgment terminating his parental rights. Finding no manifest error in the trial court's findings, we affirm the judgment of the trial court.

## I.

## ISSUE

We must decide whether the trial court manifestly erred in terminating the parental rights of C.B.

## II.

## FACTS AND PROCEDURAL HISTORY

B.C. was born prematurely in November of 2013. Upon her birth, the hospital was concerned because her mother, S.C., did not comprehend the feeding and medication requirements for her infant. The mother cannot read or write and is mentally disabled. The mother's parents cannot read or write or care for B.C. Following B.C.'s birth, her mother, S.C., moved in with an abusive boyfriend and subsequently had a child with him. B.C.'s biological father was incarcerated at the time of her birth, and was still incarcerated at the time of trial two and one-half years later, with no known release date.

B.C. was placed in the custody of the Department of Children and Family Services (DCFS) when she was three months old. Seven weeks later she was adjudicated a child in need of care. The court approved a reunification plan, but the parents did not comply with the requirements of care and support. In fact, the mother's abusive boyfriend, who had a history of multiple criminal charges,

---

[1]Initials are used to ensure the confidentiality of a minor. Uniform Rules—Courts of Appeal, Rule 5-2.

verbally abused and threatened the employees of DCFS, and they were prevented from visiting B.C.'s mother. B.C. was placed in foster care. She was diagnosed with cancer, and the foster parents took care of her medical appointments without fail. Eventually, the plan for her care was changed from a plan of reunification with her parents to a plan of adoption.

DCFS petitioned for termination of the parents' rights two years after taking B.C. into its custody. Following a hearing, where testimony was heard from the DCFS caseworker, the mother, the boyfriend, and the father, the trial court granted the petition to terminate parental rights and freed B.C. for adoption. Only B.C.'s father appeals.

## III.

## STANDARD OF REVIEW

> "It is well-settled that an appellate court cannot set aside a juvenile court's findings of fact in the absence of manifest error or unless those findings are clearly wrong." *In re A.J.F.*, 00-0948 (La. 6/30/00), 764 So.2d 47, 61. "Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court." *Id.*; *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

*State ex rel. S.M.W.*, 00-3277, p. 14 (La. 2/21/01), 781 So.2d 1223, 1233.

Even where the appellate court believes its inferences are more reasonable than the fact finders, reasonable determinations and inferences of fact should not be disturbed on appeal. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). Additionally, a reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as

2

trier of fact it would have weighed that evidence differently. *Housely v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts. *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973).

IV.

## LAW AND DISCUSSION

B.C.'s father, C.B., contends that the trial court erred in freeing B.C. for adoption. He argues primarily that DCFS failed to place B.C. with relatives, pursuant to La.Ch.Code art. 622, as he requested. Article 622 provides:

> A. Prior to the continued custody hearing required in Article 624, a suitable relative or other suitable individual may seek and obtain an ex parte court order to take provisional custody of the child pending the continued custody hearing. The provisions of Code of Civil Procedure Article 3945 are inapplicable to an ex parte order rendered pursuant to this Paragraph.

> B. Unless the best interest of the child requires a different placement, a child who appears to be a child in need of care and his immediate removal is necessary for his protection from further abuse or neglect shall be placed, pending a continued custody hearing, in accordance with this priority:

> (1) In the home of a suitable relative who is of the age of majority and with whom the child has been living in a wholesome and stable environment if the relative is willing and able to continue to offer such environment for the child pending an adjudication hearing and if he agrees to the safety plan.

> (2) In the home of a suitable relative who is of the age of majority if the relative is willing and able to offer a wholesome and stable environment for the child pending an adjudication hearing and if he agrees to the safety plan.

3

> (3) In the home of a suitable individual who is of the age of majority if he is willing and able to offer a wholesome and stable environment for the child pending an adjudication hearing and if he agrees to the safety plan.

> (4) In foster care under the supervision of the department until further orders of the court.

C.B. argues that he provided DCFS the names of suitable relatives who could provide a stable environment and care for B.C. and that DCFS did not make those efforts as required by statute because its efforts were focused upon adoption. Conversely, the DCFS case worker, Kim Chisley, testified that, as requested, her office contacted C.B.'s brother and spoke to the brother's wife. The brother's wife informed DCFS not to do a home study with her because she was not able to care for B.C. She informed DCFS that she had lost her own son and was caring for his children. C.B. argues that his cousin and wife, Darrell and Ashley Chapman of Sulphur, Louisiana, were stable and were interested in caring for B.C. However, Ms. Chisley testified that they were turned down by the Sulphur office. Ms. Chisley stated that she was not given a printout but received an e-mail stating that the couple was turned down as potential caretakers of B.C.

B.C. has further argued that he complied as much as possible with his plan of care and support while incarcerated, completing various anger management and parenting classes. He charges that DCFS did not bring B.C. for quarterly visitation as required. DCFS testified that C.B. was moved around to various parishes and did not provide information regarding his movements. At trial, C.B. testified that he was working in DeRidder the month that B.C. was born; he did some drugs, ran from police, and was picked up on some old warrants. He testified that he served five months in Beauregard Parish; five months in Catahoula Parish;

4

one and a half months in LaSalle Parish; applied for a five-week substance abuse program in Bossier Parish; served time in Allen Parish; then Claiborne Parish; then Vernon Parish. He testified that he was currently fighting charges in Allen Parish; that he was in jail for simple burglary and felony theft, but he was trying to get those charges dismissed because "there was no firearms." He had a court date set for a week after the hearing but did not know when he would be released.

Near the end of his testimony, C.B. said that he was not asking the court to give him his child; rather, he just wanted her placed with family so he could see her. He also wanted her to know her family and his four other children. We note that one of C.B.'s plan requirements was to contribute $10 per month to support B.C. while she was in foster care. He did not comply. And we found no evidence in the record that his family tried to help him in providing that nominal amount as a show of support for him or of an ability to support and care for his child.

Louisiana Children's Code Article 1015 provides the grounds for termination of parental rights. Ground (6) provides for termination if:

> (6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

La.Ch.Code art. 1015(6).

Louisiana Children's Code Article 1036[2] provides the method of proving the above elements. Paragraphs (C) and (D) of Article 1036 provide in pertinent part:

> C. Under Article 1015([6]), lack of parental compliance with a case plan may be evidenced *by one or more* of the following:
>
> . . . .
>
> (3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
>
> (4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
>
> (5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
>
> (6) The parent's lack of substantial improvement in redressing the problems preventing reunification.
>
> . . . .
>
> D. Under Article 1015([6]), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced *by one or more* of the following:
>
> . . . .
>
> (2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
>
> (3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon

---

[2]Louisiana Children's Code Article 1036 specifically references La.Ch.Code art. 1015(6) above as "Article 1015(5)" as it appeared before it was redesignated as paragraph 6, pursuant to Acts 2016, No. 608, § 1, which became effective on August 1, 2016.

> expert opinion or based upon an established pattern of behavior.

La.Ch.Code art. 1036(C) and (D) (emphasis added).

As shown above, only one condition is needed to prove lack of compliance under Article 1036(C), and only one condition is needed to prove no expectation of improvement under Article 1036(D). C.B.'s failure to keep the department apprised of his transfers in order to comply with visitation; his failure to contribute even $10 per month for foster care; and his repeated failure to comply and contribute satisfy all four of the above-listed criteria under Article 1036(C). Likewise, under Article 1036(D), C.B.'s repeated incarcerations, serving one sentence after another for various warrants, with no known date of release, establish a pattern of behavior leading to the conclusion that there would be no improvement in the near future, particularly with regard to the failure to contribute for two-and-a-half years. Especially telling is his testimony at the end of the hearing, stating that he was not really seeking the return of his child to him personally; he just wanted her placed with his family so that he could see her.

Based upon the record as a whole, there was clear and convincing evidence of C.B.'s non-compliance with his case plan and that improvement was not forthcoming. Additionally, the trial court found that it was in the best interest of B.C. that parental rights be terminated and that she be freed for adoption. Given B.C.'s young age and foster parents who had cared for her almost since birth and wanted to adopt her, we find no manifest error in the trial court's findings.

V.

## **CONCLUSION**

Based upon the foregoing, the trial court's judgment is affirmed. The costs of this appeal are assessed to C.B.

**AFFIRMED**.

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. RULE 2-16.3, UNIFORM RULES—COURTS OF APPEAL.